

1  Elizabeth P. Lin (State Bar No. 174663)
   **THE LIN LAW FIRM, APLC**
2  2705 S. Diamond Bar Blvd., Suite 398
   Diamond Bar, CA 91765
3  Telephone: (909) 595-5522
   Facsimile: (909) 595-5519
4  elizabethl@thelinlawfirm.com

5
   Mark P. Kindall (State Bar No. 138703)
6  Robert A. Izard (admitted *pro hac vice*)
   Jeffrey S. Nobel (admitted *pro hac vice*)
7  Nicole A. Veno (admitted *pro hac vice*)
   **IZARD NOBEL LLP**
8  29 South Main Street, Suite 305
   West Hartford, CT 06107
9  Telephone: (860) 493-6292
   Facsimile: (860) 493-6290
10 mkindall@izardnobel.com
   rizard@izardnobel.com
11 jnobel@izardnobel.com
   nveno@izardnobel.com

12

13 *Attorneys for Plaintiffs*

14 *Additional counsel on signature page*

15

16            UNITED STATES DISTRICT COURT

17            CENTRAL DISTRICT OF CALIFORNIA

18

| | |
|---|---|
| JULIE FAGAN, MICHAEL FAGAN, MELISSA PENNELLATORE , AMY SAPEIKA and SHELLEY TRINCHERO, Individually and on Behalf of All Others Similarly Situated, | No. 13-cv-01316-SVW-OP |
| Plaintiffs, | <u>CLASS ACTION</u> |
| vs. | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| NEUTROGENA CORPORATION, | |
| Defendant. | DEMAND FOR JURY TRIAL |

19

20

21

22

23

24

25

26

27

28

---

FIRST AMENDED CLASS ACTION COMPLAINT

1    Plaintiffs, by their attorneys, on behalf of themselves and all others similarly situated,

2  make the following allegations pursuant to the investigation of their counsel and based on

3  information and belief, except as to allegations pertaining to personal knowledge as to

4  themselves.  Plaintiffs believe that substantial additional evidentiary support exists for the

5  allegations set forth herein and will be available after a reasonable opportunity for discovery.

6                                    **INTRODUCTION**

7    1.    Neutrogena Corporation ("Defendant" or "Neutrogena") manufactures, sells, and

8  distributes its Neutrogena Pure & Free® sunscreen products (the "Products"), three of which are

9  marketed for use on babies, using a marketing and advertising campaign that is centered around

10  claims that the Products contain "100% naturally sourced sunscreen ingredients," "naturally-

11  sourced sunscreen ingredients" or "100% naturally sourced sunscreens."[1]

12    2.    The specific Products at issue are:

13        a.   Pure & Free® Baby Faces Ultra Gentle Cream Sunblock Broad Spectrum SPF 45+

14            and SPF 50+;[2]

15        b.   Pure & Free® Baby Sunscreen Stick Broad Spectrum SPF 60+;

16        c.   Pure & Free® Baby Sunscreen Broad Spectrum SPF 60+;[3] and

17        d.   Pure & Free® Liquid Sunscreen Broad Spectrum SPF 50.

18    3.    This action seeks to remedy the unfair and deceptive business practices arising

19  from the marketing and sale of the Products as "Natural."  The Products' Principal Display

20

21  _____
[1] Natural is defined as "existing in or produced by nature: not artificial." http://www.merriam-
22  webster.com/dictionary/natural.  Source is defined as "a point or origin or procurement."  When
   used as a verb, it is defined as "to obtain from a source." www.merriam-
23  webster.com/dictionary/source.  The FDA has not defined the term "natural" in the context of
   cosmetics. To the contrary, on December 14, 2012, the FDA affirmed that "proceedings to define
24  the term "natural" do not fit within [its] current health and safety priorities." Appellants' Motion
   to take Judicial Notice, Exhibit A at 3 *Astiana v. The Hain Celestial Group,* No. 12-cv-17596
25  (9th Cir. March 22, 2013).

26  [2] Both Baby Faces Ultra Gentle Cream Sunblock SPF formulations contain identical ingredients.

27  [3] Upon information and belief, the representation on this product was changed from "100%
   naturally sourced sunscreen ingredients" to "naturally-sourced sunscreen ingredients" in spring
28  2013.

1  Panels ("PDPs") state, "100% naturally sourced sunscreen ingredients," "naturally-sourced

2  sunscreen ingredients" or "100% naturally sourced sunscreens." These statements are false and

3  misleading to a reasonable consumer because, as set forth more fully herein, the Products are not

4  naturally sourced and instead contain unnatural, synthetic ingredients.

5      4.    Plaintiffs and members of the Classes and Subclasses described below paid a

6  premium for the Products over comparable sunscreen products that did not purport to be

7  naturally sourced. Contrary to Defendant's representations, instead of receiving a naturally

8  sourced product, they received products that contained unnatural synthetic ingredients.

9      5.    Defendant's false representations and advertising that the Products contain "100%

10  naturally sourced sunscreen ingredients," "naturally-sourced sunscreen ingredients" or "100%

11  naturally sourced sunscreens" constitutes unfair, unlawful, and fraudulent conduct, is likely to

12  deceive members of the public, is unethical, oppressive, unscrupulous, and/or substantially

13  injurious to consumers, and violates California's legislatively declared policy against

14  misrepresenting the characteristics of goods and services. As such, Defendant's practices violate

15  California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (hereinafter, the

16  "CLRA") and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

17  (hereinafter, the "UCL"). Accordingly, pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs

18  seek an order enjoining Defendant's acts of unfair competition and awarding restitution and

19  other appropriate relief to the individual victims of Defendant's unfair and deceptive practices.

20  Additionally, Plaintiffs seek damages pursuant to Cal. Civ. Code § 1781(a).

21                     **JURISDICTION AND VENUE**

22      6.    This Court has original jurisdiction over the claims asserted herein individually

23  and on behalf of the Class pursuant to 28 U.S.C. § 1332(d), as amended by the Class Action

24  Fairness Act of 2005. Subject matter jurisdiction is proper because: (1) the amount in

25  controversy in this class action exceeds five million dollars, exclusive of interest and costs; and

26  (2) a substantial number of the members of the proposed class are citizens of a state different

27  from that of Defendant. Personal jurisdiction is proper as Defendant is domiciled in California

28

1  and has purposefully availed itself of the privilege of conducting business activities within the

2  State of California.

3      7.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a

4  resident of this district.   Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a

5  substantial part of the events giving rise to the claim occurred in this District.

6                                  **PARTIES**

7      8.      Plaintiff Julie Fagan is a resident of Sunnyvale, California and an individual

8  consumer.  Plaintiff purchased at least three Pure & Free® Baby Sunscreen Broad Spectrum SPF

9  60+ products[4] and one Pure & Free® Baby Sunscreen Stick Broad Spectrum SPF 60+ product

10  between 2012 and 2013 at Walgreens, 303 2nd Street, Los Altos, CA 94022; Walgreens, 121 E El

11  Camino Real, Mountain View, CA, 94040; and Walgreens, 1306 S. Mary Ave, Sunnyvale, CA

12  94087.  Plaintiff viewed the product labels set forth in Paragraph 16 before her purchases, relied

13  on the phrases, "100% naturally sourced sunscreen ingredients" and "naturally-sourced

14  sunscreen ingredients" when purchasing the products and paid a premium over comparable

15  products that do not purport to be naturally sourced.

16      9.      Plaintiff Michael Fagan is a resident of Sunnyvale, California and an individual

17  consumer.  Plaintiff purchased Pure & Free® Baby Sunscreen Broad Spectrum SPF 60+ for a

18  price of $16.49/3 oz on July 5, 2013 at Walgreens, 303 2nd Street, Los Altos, CA 94022.

19  Plaintiff additionally purchased Pure & Free® Baby Sunscreen Broad Spectrum SPF 60+ at the

20  same Walgreens store in approximately April 2013.  Plaintiff viewed the product label set forth

21  in Paragraph 16 before his purchases, relied on the phrases, "100% naturally sourced sunscreen

22  ingredients" and/or "naturally-sourced sunscreen ingredients" when purchasing the products and

23  paid a premium over comparable products that do not purport to be naturally sourced.

24      10.     Plaintiff Melissa Pennellatore is a resident of North Easton, Massachusetts and an

25  individual consumer.   Plaintiff purchased Pure & Free® Baby Faces Ultra Gentle Cream

26  ─────────────────────

27  [4] Plaintiff purchased Pure & Free® Baby Sunscreen Broad Spectrum SPF 60+ products labeled
   both "100% naturally sourced sunscreen ingredients" and "naturally-sourced sunscreen
   ingredients."

28

Sunblock Broad Spectrum SPF 50+ at CVS in Mashpee, MA over the Memorial Day holiday weekend in May 2013.  Plaintiff reviewed the product labels set forth in Paragraph 16 before her purchase, relied on the representation that the product consisted of "100% naturally sourced" ingredients, and paid a premium for the Products over comparable products that do not purport to be naturally sourced.

11.     Plaintiff Amy Sapeika is a resident of Birmingham, Michigan and an individual consumer.  Plaintiff purchased four 3-ounce Pure & Free® Baby Sunscreen Broad Spectrum SPF 60+[5] products for a price of $10.99 each and one half-ounce Pure & Free® Baby Sunscreen Stick Broad Spectrum SPF 60+ product for a price of $8.79 at Target, 2400 S. Telegraph Road, Bloomfield Hills, MI, 48302 on May 9, 2013.  Plaintiff additionally purchased one Pure & Free® Baby Sunscreen Broad Spectrum SPF 60+ product and one Pure & Free® Baby Sunscreen Stick Broad Spectrum SPF 60+[6] product at the same Target store in 2012.  Plaintiff reviewed the product labels set forth in paragraph 16 before her purchase, relied on the representations "100% naturally sourced sunscreen ingredients" and "naturally-sourced sunscreen ingredients," and paid a premium for the Products over comparable products that do not purport to be naturally sourced.

12.     Plaintiff Shelley Trinchero is a resident of Santa Cruz, California and an individual consumer.  Plaintiff purchased Pure & Free® Liquid Sunscreen Broad Spectrum SPF 50 in September 2011 at CVS, 1750 41st Avenue, Capitola, CA 95010 or Rite-Aid, 1475 41st Avenue, Capitola, CA 95010.  Plaintiff reviewed the product labels set forth in paragraph 15 before her purchase, relied on the representation "100% naturally sourced sunscreens," and paid a premium for the Products over comparable products that do not purport to be naturally sourced.

13.     Defendant Neutrogena Corporation is a Delaware corporation headquartered at 5760 W. 96th Street, Los Angeles, California 90045.  Defendant distributes, markets, and sells the Products throughout the United States in pharmacies, supermarkets and other retailers.  Upon

---

[5] This Pure & Free® Baby Sunscreen Broad Spectrum SPF 60+ product was labeled "naturally-sourced sunscreen ingredients."

[6] This Pure & Free® Baby Sunscreen Broad Spectrum SPF 60+ product was labeled "100% naturally sourced sunscreen ingredients."

FIRST AMENDED CLASS ACTION COMPLAINT

1  information and belief, Defendant's conduct giving rise to the claims set forth herein, including

2  the manufacturing, labeling, and advertising of the Products, takes place in California.

3                              **SUBSTANTIVE ALLEGATIONS**

4         14.    Consumers have become increasingly concerned about the effects of synthetic and

5  chemical ingredients in food, cleaning, bath and beauty, and everyday household products.

6  Companies such as Neutrogena have capitalized on consumer appetite for "natural products."

7  Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural"

8  over ordinary products that contain synthetic ingredients.  In 2010, for example, nationwide sales

9  of natural products totaled $117 billion.[7]

10        15.    Neutrogena is a brand of skin care, hair care, and cosmetic products manufactured

11 and marketed by Neutrogena Corporation sold in drugstores, grocery stores and discount stores

12 nationwide.  Neutrogena manufactures approximately thirty seven varieties of sunscreen, four of

13 which comprise the "Pure & Free" line.  Defendant touts the purportedly "natural" protection

14 from the Products on its website and specifically represents that this "natural" protection is what

15 makes the Products superior to "other leading baby sunblocks."  For example, its Pure & Free®

16 baby sunscreen page[8] misleadingly explains,

17

18  A baby's skin is 10 times more sensitive to the environment.

19  With a thinner skin and a developing natural protection system, a baby's skin needs special protection from the sun and irritating chemicals. That's why Neutrogena created Pure & Free® Baby sunscreen. Unlike other leading baby sunblocks, it has 100% naturally-sourced sunscreen ingredients.

20

21   Powerful sunscreens that come from nature.

22  **pure**SCREEN®

23  Only Pure & Free® Baby sunscreen protects with PURESCREEN®, a powerful blend of physical sunscreens known to be gentle on sensitive skin. It forms a protective barrier over delicate skin, reflecting and scattering harmful UVA/UVB rays before they have a chance to even touch your baby.

24

25



26  [7]http://www.npainfo.org/NPA/About_NPA/NPA/AboutNPA/AbouttheNaturalProductsAssociati
on.aspx?hkey=8d3a15ab-f44f-4473-aa6e-ba27ccebcbb8

27  [8] http://www.neutrogena.com/category/sun/pure+-+free-+baby.do

28

16.     Defendant falsely represents that the Products contain only naturally sourced ingredients.  The PDP of each Product  states, "100% naturally sourced sunscreen ingredients," "100% naturally sourced sunscreens" or "naturally-sourced sunscreen ingredients:"



17.     Based on the language that appears on the PDP of each Product, "100% naturally sourced sunscreens," "100% naturally sourced sunscreen ingredients" or "naturally-sourced sunscreen ingredients," Plaintiffs reasonably believed the Products contained only natural ingredients.

18.     The phrases "100% naturally sourced sunscreens," "100% naturally sourced sunscreen ingredients" and "naturally-sourced sunscreen ingredients" constitute representations to a reasonable consumer that the Products contain only natural ingredients.  These phrases are misleading to a reasonable consumer because the Products actually contain numerous unnatural synthetic ingredients.

19.     In fact, in direct contradiction to Defendant's representations, the Products contain irritating chemicals such as Retinyl Palmitate and Tocopheryl Acetate.

FIRST AMENDED CLASS ACTION COMPLAINT

20.     Additionally, Neutrogena Pure & Free® Liquid Sunscreen SPF 50, the one product in the Pure & Free® product line marketed to adults, contains Dmdm Hydantoin, an antimicrobial preservative that releases formaldehyde.[9]

21.     Defendant's false and misleading representations are particularly egregious because three of the four products in the Pure & Free® product line are marketed for use on babies.  As Defendant states on its website, "[w]ith a thinner skin and a developing natural protection system, a baby's skin needs special protection from the sun and irritating chemicals."[10]

### THE UNNATURAL INGREDIENTS

22.     In direct contradiction of Defendant's misrepresentations, the Products contain the following unnatural ingredients:

a.   **Pure & Free® Baby Sunscreen Broad Spectrum SPF 60+** contains the following unnatural synthetic ingredients:

    i.   *Arachidyl Alcohol* – a synthetic emulsion stabilizer;[11]

    ii.   *Arachidyl Glucoside* – a synthetic surfactant;[12]

    iii.   *BHT*– a synthetic preservative with limited evidence of carcinogenicity;[13]

    iv.   *Butylene Glycol* – a synthetic solvent and conditioning agent;[14]

    v.   *Cetyl Dimethicone* – a synthetic silicon-based polymer;[15]

    vi.   *Dimethicone* – a synthetic silicone-based polymer used as a lubricant and conditioning agent;[16]

---

[9] http://www.ewg.org/skindeep/ingredient/702196/DMDM_HYDANTOIN/

[10] http://www.neutrogena.com/category/sun/pure+-+free-+baby.do

[11] http://www.ewg.org/skindeep/ingredient/700476/ARACHIDYL_ALCOHOL/

[12] http://www.ewg.org/skindeep/ingredient/700479/ARACHIDYL_GLUCOSIDE/

[13] http://www.ewg.org/skindeep/ingredient/700741/BHT/

[14] http://www.ewg.org/skindeep/ingredient/700861/BUTYLENE_GLYCOL/

[15] http://www.ewg.org/skindeep/ingredient/701266/CETYL_DIMETHICONE/

FIRST AMENDED CLASS ACTION COMPLAINT

vii. ***Dimethicone PEG-8 Laurate*** – a synthetic skin conditioning agent with contamination hazards from carcinogens ethylene oxide and 1,4 dioxane;[17]

viii. ***Disodium EDTA*** – a synthetic chelating agent;[18]

ix. ***Ethylhexylglycerin*** – a synthetic preservative and skin conditioning agent;[19]

x. ***Glyceryl Stearate*** – a synthetic surfactant and emulsifying agent;[20]

xi. ***Hydroxyethyl Acrylate/Sodium Acryloyldimethyl Taurate Copolymer*** – a synthetic emulsion stabilizer and opacifying agent;[21]

xii. ***Isohexadecane*** – a synthetic skin conditioning agent and emollient;[22]

xiii. ***Methicone*** – a synthetic skin conditioning agent and emollient;[23]

xiv. ***Methylisothiazolinone*** – a synthetic preservative that has been associated with allergic reactions.  Some studies suggest methylisothiazolinone may be neurotoxic;[24]

xv. ***Peg-100 Stearate*** – a synthetic surfactant with contamination hazards from carcinogens ethylene oxide and 1,4 dioxane;[25]

---

[16] http://www.ewg.org/skindeep/ingredient/702011/DIMETHICONE/

[17] http://www.ewg.org/skindeep/ingredient/718524/DIMETHICONE_PEG-8_LAURATE/

[18] http://www.ewg.org/skindeep/ingredient/702146/DISODIUM_EDTA/

[19] http://www.ewg.org/skindeep/ingredient/702352/ETHYLHEXYLGLYCERIN/

[20] http://www.ewg.org/skindeep/ingredient/702658/GLYCERYL_STEARATE_SE/

[21] http://www.ewg.org/skindeep/ingredient/703053/HYDROXYETHYL_ACRYLATE/_SODIUM_ACRYLOYLDIMETHYL_TAURATE_COPOLYMER/

[22] http://www.ewg.org/skindeep/ingredient/703183/ISOHEXADECANE/

[23] http://www.ewg.org/skindeep/ingredient/703873/METHICONE/

[24] http://www.ewg.org/skindeep/ingredient.php?ingred06=703935

[25] http://www.ewg.org/skindeep/ingredient/721388/PEG-100_STEARATE/

xvi. **PEG-8** – a synthetic humectant and solvent with contamination hazards from carcinogens ethylene oxide and 1,4 dioxane;[26]

xvii. **Polyaminopropyl Biguanide** – a synthetic preservative;[27]

xviii. **Polyhydroxystearic Acid** – a synthetic suspending agent;[28]

xix. **Polymethyl Methacrylate** – a synthetic polymer;[29]

xx. **Polysorbate 60** – a synthetic emulsifier and surfactant with contamination hazards from carcinogens ethylene oxide and 1,4 dioxane;[30]

xxi. **Retinyl Palmitate** – a synthetic skin conditioning agent. When exposed to UV light it can produce free radicals that can damage DNA and cause gene mutations. **Studies have linked retinyl palmitate exposed to UV light to cancer** and have raised concerns that prolonged exposure may be toxic to a developing fetus;[31]

xxii. **Styrene/Acrylates Copolymer** – a synthetic film-former with contamination hazards from methacrylic acid, acrylic acid, 2-ethylhexyl acrylate;[32]

xxiii. **Tocopheryl Acetate** – a synthetic skin conditioning agent with **contamination hazards from hydroquinone,[33] a chemical that may increase the risk of skin cancer when exposed to UV light**;[34] and

---

[26] http://www.ewg.org/skindeep/ingredient/704655/PEG-8/

[27] http://www.ewg.org/skindeep/ingredient/704962/POLYAMINOPROPYL_BIGUANIDE/

[28] http://www.ewg.org/skindeep/ingredient/705059/POLYHYDROXYSTEARIC_ACID/

[29] http://www.ewg.org/skindeep/ingredient/705070/POLYMETHYL_METHACRYLATE/

[30] http://www.ewg.org/skindeep/ingredient/705139/POLYSORBATE-60/

[31] http://www.ewg.org/skindeep/ingredient/705545/RETINYL_PALMITATE_(VITAMIN_A_PALMITATE)/

[32] http://www.ewg.org/skindeep/ingredient/706353/STYRENE%3B%3B_ACRYLATES_COPOLYMER/

[33] http://www.ewg.org/skindeep/ingredient/706569/TOCOPHERYL_ACETATE/

| | |
|---|---|
| 1 | xxiv. ***Trimethylsiloxysilicate*** – a synthetic silicone-based polymer.[35] |
| 2 | b. **Pure & Free® Liquid Sunscreen Broad Spectrum SPF 50** contains the |
| 3 | following unnatural, synthetic ingredients: |
| 4 | i. ***BHT*** – see paragraph 22(a)(iii); |
| 5 | ii. ***C12-15 Alkyl Benzoate*** – a synthetic skin conditioning agent;[36] |
| 6 | iii. ***Cetyl Peg/Ppg-10/1 Dimethicone*** – a synthetic skin conditioning agent |
| 7 | with contamination hazards from 1,4 dioxane and ethylene dioxide;[37] |
| 8 | iv. ***Dimethicone*** – see paragraph 22(a)(vi); |
| 9 | v. ***Dmdm Hydantoin*** – a synthetic antimicrobial preservative that releases |
| 10 | formaldehyde;[38] |
| 11 | vi. ***Polyglyceryl-4 Diisostearate/Polyhydroxystearate/Sebacate*** – a synthetic |
| 12 | surfactant;[39] |
| 13 | vii. ***Ppg-12/Smdi Copolymer*** – a synthetic film former;[40] |
| 14 | viii. ***Triethoxycaprylylsilane*** – a synthetic silicone-based binder;[41] and |
| 15 | ix. ***Trisiloxane***- a synthetic antifoaming agent.[42] |
| 16 | c. **Pure & Free® Baby Sunscreen Stick Broad Spectrum SPF 60+** contains the |
| 17 | following unnatural synthetic ingredients: |

[34] http://safecosmetics.org/article.php?id=289

[35] http://www.ewg.org/skindeep/ingredient/706697/TRIMETHYLSILOXYSILICATE/

[36] http://www.ewg.org/skindeep/ingredient/700898/C12-15_ALKYL_BENZOATE/

[37]http://www.ewg.org/skindeep/ingredient/701277/CETYL_PEG%3B%3B_PPG-10%3B%3B_1_DIMETHICONE/#

[38] http://www.ewg.org/skindeep/ingredient/702196/DMDM_HYDANTOIN/

[39]http://www.cosmeticanalysis.com/cosmetic-ingredients/polyglyceryl-4-diisostearate-polyhydroxystearate-sebacate.html

[40] http://www.ewg.org/skindeep/ingredient/705246/PPG-12%3B%3B_SMDI_COPOLYMER/

[41] http://www.ewg.org/skindeep/ingredient/706643/TRIETHOXYCAPRYLYLSILANE/

[42] http://www.ewg.org/skindeep/ingredient/706714/TRISILOXANE/

     i.   **BHT** – see paragraph 22(a)(iii);

     ii.   **Butyloctyl Salicylate** – a synthetic skin conditioning agent;[43]

     iii.   **C12 15 Alkyl Benzoate** – see paragraph 22(b)(ii);

     iv.   **Isostearic Acid** – a synthetic binder and surfactant;[44]

     v.   **Polyethylene** – a synthetic emulsion stabilizer with contamination hazards from 1,4 dioxane; and

     vi.   **Triethoxycaprylylsilane** – see paragraph 22(b)(viii).

    d.  **Pure & Free® Baby Faces Ultra Gentle Sunblock Broad Spectrum SPF 50+ and SPF 45+** contain the following unnatural synthetic ingredients:

     i.   **C12 15 Alcohol Benzoate** – see paragraph 22(b)(ii);

     ii.   **Carbomer** – a synthetic emulsion stabilizer;[45]

     iii.   **Cetyl Dimethicone** – see paragraph 22(b)(v);

     iv.   **Cetyl Hydroxyethylcellulose** – a synthetic emulsion stabilizer;[46]

     v.   **Cetyl PEG/PPG 10/1 Dimethicone** – see paragraph 22(b)(iii);

     vi.   **Dimethicone Crosspolymer** – a synthetic emulsion stabilizer;[47]

     vii.   **Dimethicone** – see paragraph 22(a)(vi);

     viii.   **Dimethicone/Vinyl Dimethicone Crosspolymer** – a synthetic viscosity increasing agent;[48]

     ix.   **Disodium Phosphate** – a synthetic buffering agent;[49]

---

[43] http://www.ewg.org/skindeep/ingredient/700867/BUTYLOCTYL_SALICYLATE/

[44] http://www.ewg.org/skindeep/ingredient/703222/ISOSTEARIC_ACID/

[45] http://www.ewg.org/skindeep/ingredient/701088/CARBOMER/

[46] http://www.ewg.org/skindeep/ingredient/701271/CETYL_HYDROXYETHYLCELLULOSE/

[47] http://www.ewg.org/skindeep/ingredient/702028/DIMETHICONE_CROSSPOLYMER/

[48] http://www.ewg.org/skindeep/ingredient/702043/DIMETHICONE%3B%3B_VINYL_DIMETHICONE_CROSSPOLYMER/

[49] http://www.ewg.org/skindeep/ingredient/702161/DISODIUM_PHOSPHATE/

x.   ***Ethylhexylglycerin*** – see paragraph 22(a)(ix);

xi.   ***Hexyl Laurate*** – a synthetic skin conditioning agent;[50]

xii.   ***Isopropyl Myristate*** – a synthetic binder;[51]

xiii.   ***Phenoxyethanol*** – a synthetic preservative;[52]

xiv.   ***Polyglyceryl 4 Isostearate*** – a synthetic skin conditioning agent;[53]

xv.   ***Styrene/Acrylates Copolymer*** – see paragraph 22(a)(xxii); and

xvi.   ***Triethoxycaprylylsilane*** – see paragraph 22(b)(viii).

23.   Upon information and belief, all of the sales and marketing concepts, plans, communications and materials concerning the Products were conceived of, written, approved and implemented by Defendant's employees located at Defendant's headquarters in Los Angeles, California.  In particular, the misrepresentations on the PDPs alleged above were conceived of, written and approved and implemented by Defendant's employees located at Defendant's headquarters in Los Angeles, California.  The employees responsible for the marketing of Neutrogena brand products, including Brand Managers and the Product Director are located at Defendant's headquarters in Los Angeles, California.  Accordingly, the alleged acts and practices relevant to this litigation emanated from Defendant's headquarters in Los Angeles, California.  Moreover, upon information and belief, Defendant receives substantial revenues from the sale of the Products in California.

24.   As set forth herein, Plaintiffs and Class members suffered an ascertainable loss in at least the following amounts, in that they paid a premium for the Products over comparable products[54] that are not marketed as natural:

---

[50] http://www.ewg.org/skindeep/ingredient/702842/HEXYL_LAURATE/

[51] http://www.ewg.org/skindeep/ingredient/703206/ISOPROPYL_MYRISTATE/#

[52] http://www.ewg.org/skindeep/ingredient/704811/PHENOXYETHANOL/

[53] http://www.ewg.org/skindeep/ingredient/705036/POLYGLYCERYL-4_ISOSTEARATE/

[54] The comparable products are sold in many of the same stores and are used for the same purpose as the Products. Additionally, the comparable products contain many of the same ingredients as the Products. Coppertone Water Babies Pure & Simple Sunscreen Lotion SPF 50, Pure & Free® Baby Sunscreen Broad Spectrum SPF 60+ and Pure & Free® Baby Faces Ultra

| Mislabeled "natural" product: Pure & Free® Baby Sunscreen Broad Spectrum  SPF 60 | Price:<br><br>$10.99/3oz [55] | Price per ounce:<br><br>$3.66 |
|---|---|---|
| Comparable non-natural product: Coppertone Water Babies Pure & Simple Sunscreen Lotion SPF 50 | Price:<br><br>$10.99/8 oz[56] | Price per ounce:<br><br>$1.37 |
| Premium paid per ounce: | | $2.29 |
| Premium paid per 3 oz product: | | **$6.87** |

| Mislabeled "natural" product: Pure & Free® Baby Sunscreen Stick Broad Spectrum SPF 60+ | Price:<br>$8.99/.47 oz[57] | Price per ounce:<br>$19.13 |
|---|---|---|
| Comparable non-natural product: Coppertone Water Babies Sunscreen Stick SPF 55 | Price:<br>$4.99/.6 oz[58] | Price per ounce:<br><br>$8.32 |
| Premium paid per ounce: | | $10.81 |
| Premium paid per .47 oz product: | | **$5.08** |

Gentle Sunblock Broad Spectrum SPF 50+ and 45+ all contain zinc oxide and triethoxycaprylylsilane. Coppertone Water Babies Sunscreen Stick SPF 55 and Pure & Free® Baby Sunscreen Broad Spectrum  SPF 60+ both contain beeswax and ozokerite.  Neutrogena Sheer Dry-Touch Sunscreen Broad Spectrum SPF 55 and Neutrogena Pure & Free® Liquid Sunscreen SPF 50 both contain BHT, trimethylsiloxysilicate and dimethicone.

[55]http://www.drugstore.com/neutrogena-pure-and-free-baby-sunblock-spf-60-lotion/qxp211762?catid=184131

[56]http://www.drugstore.com/coppertone-water-babies-pure-and-simple-sunscreen-lotion-spf-50/qxp213377?catid=184131

[57]http://www.drugstore.com/neutrogena-pure-and-free-baby-sunblock-spf-60-stick/qxp211763?catid=184131

[58]http://www.drugstore.com/coppertone-water-babies-sunscreen-stick-spf-55/qxp249022?catid=184131

| Mislabeled "natural" product: Pure & Free® Baby Faces Ultra Gentle Sunblock Broad Spectrum SPF 50+ and SPF 45+ | Price: $10.99-11.49/2.5 oz[59] | Price per ounce: $4.40-4.60 |
|---|---|---|
| Comparable non-natural product: Coppertone Water Babies Pure & Simple Sunscreen Lotion SPF 50 | Price: $10.99/8 oz[60] | Price per ounce: $1.37 |
| Premium paid per ounce: | | $3.03- 3.23 |
| Premium paid per 2.5 oz product: | | $7.58-8.08 |

| Mislabeled "natural" product: Neutrogena Pure & Free® Liquid Sunscreen SPF 50 | Price: $12.99/1.4 oz[61] | Price per ounce: $9.28 |
|---|---|---|
| Comparable non-natural product: Neutrogena Sheer Dry-Touch Sunscreen Broad Spectrum SPF 55 | Price: $11.99/3oz[62] | Price per ounce: $4.00 |
| Premium paid per ounce: | | $5.28 |
| Premium paid per 1.4 oz product: | | $7.39 |

## CLASS ACTION ALLEGATIONS

25.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure Rule 23 on behalf of themselves and the Classes (the "Classes") defined as follows:

a.   All purchasers of the Products in the United States who purchased the Products primarily for personal, family or household purposes. Specifically excluded from this Class are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, successor in interest or assign of Defendant. Also excluded are the judge to whom this

---

[59] http://www.drugstore.com/neutrogena-pure-and-free-baby-faces-spf-50/qxp389208?catid=184131; http://www.neutrogena.com/product/pure+-+free-+baby+faces+ultra+gentle+sunscreen+broad+spectrum+spf+45-.do?sortby=ourPicks

[60] http://www.drugstore.com/coppertone-water-babies-pure-and-simple-sunscreen-lotion-spf-50/qxp213377?catid=184131

[61] http://www.drugstore.com/neutrogena-pure-and-free-liquid-daily-sunscreen-spf-50/qxp328504?catid=184131

[62] http://www.drugstore.com/neutrogena-ultra-sheer-dry-touch-sunscreen-spf-55/qxp150735

case is assigned and any member of the judge's immediate family (the "Nationwide Class"); in the alternative,

b.   All purchasers of the Products in the States of Alabama, Alaska, Arkansas, California, Connecticut, Delaware, Florida, Hawaii, Illinois, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Rhode Island, South Carolina, Tennessee, Vermont, Washington, West Virginia, Wisconsin and the District of Columbia who purchased the Products primarily for personal, family or household purposes.   Specifically excluded from this Class are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; any affiliate, legal representative, successor interest or assign of Defendant; the judge to whom this case is assigned and any member of the judge's immediate family (the "Count IV Class"); in the alternative,

c.   All purchasers of the Products in the States of Alaska, Arkansas, California, Connecticut, Delaware, Florida, Hawaii, Illinois, Kentucky, Maine, Maryland, Massachusetts, Michigan, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Rhode Island, Vermont, Washington, West Virginia, Wisconsin and the District of Columbia who purchased the Products primarily for personal, family or household purposes.   Specifically excluded from this Class are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; any affiliate, legal representative, successor in interest or assign of Defendant; the judge to whom this case is assigned and any member of the judge's immediate family (the "Count III Class").

26.   Plaintiff Amy Sapeika seeks to represent the following Subclass:

All purchasers of the Products in the State of Michigan who purchased the Products primarily for personal, family or household purposes. Specifically excluded from this Class are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, successor in interest or assign of Defendant.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family (the "Michigan Subclass").

27.   Plaintiffs Julie Fagan, Michael Fagan and Shelley Trinchero seek to represent the following Subclass:

All purchasers of the Products in the State of California who purchased the Products primarily for personal, family or household purposes.

FIRST AMENDED CLASS ACTION COMPLAINT

Specifically excluded from this Class are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, successor in interest or assign of Defendant.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family (the "California Subclass").

28.     Plaintiff Melissa Pennellatore seeks to represent the following Subclass:

All purchasers of the Products in the State of Massachusetts who purchased the Products primarily for personal, family or household purposes.   Specifically excluded from this Class are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, successor in interest or assign of Defendant.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family (the "Massachusetts Subclass").

29.     The Classes and Subclasses are sufficiently numerous, as the Products are sold in thousands of stores and they include thousands of persons who have purchased the Products.

30.     There are questions of law and fact common to the Classes and Subclasses and these questions predominate over questions affecting only individual Class and Subclass members.  Common legal and factual questions include, but are not limited to:

a.     whether Defendant advertises or markets the Products in a way that is unfair, deceptive, false or misleading to a reasonable consumer;

b.     whether, by the misconduct set forth in this Complaint, Defendant has engaged in unfair, deceptive, or unlawful business practices with respect to the advertising, marketing, and sales of its Products;

c.     whether Defendant's conduct constitutes fraudulent, unfair, or unlawful conduct; and

d.     whether, as a result of Defendant's misconduct alleged herein,  Plaintiffs and the Classes and Subclasses are entitled to restitution, injunctive and/or other monetary relief.

31.     Plaintiffs will fairly and adequately represent the Classes and Subclasses and have retained counsel experienced and competent in the prosecution of consumer and class action

litigation.  Plaintiffs have no interests antagonistic to those of other members of the Classes or Subclasses.  Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel experienced in litigation of this nature to represent them.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

32.    Plaintiffs' claims are typical of the claims of the members of the Classes and Subclasses as all members of the Classes and Subclasses are similarly affected by Defendant's wrongful conduct.

33.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Because of the amount of the individual Class and Subclass members' claims relative to the complexity of the litigation and the financial resources of the Defendant, few, if any, members of the Classes and Subclasses would seek legal redress individually for the wrongs complained of here.  Absent a class action, Class members will continue to suffer damages and Defendant's misconduct will proceed without remedy.

**COUNT I**
**(Violation of the Unfair Competition Law (the "UCL") Cal.**
**Bus. & Prof. Code § 17200, *et seq*. Based on Fraudulent,**
**Unlawful and Unfair Acts and Practices brought by All Plaintiffs on**
**behalf of the Nationwide Class, and brought by Plaintiffs Julie Fagan, Michael Fagan**
**and Shelley Trinchero on behalf of the California Subclass)**

34.    The foregoing allegations are realleged and incorporated by reference as if fully set forth herein.

35.    Under the UCL, "any unlawful, unfair or fraudulent business act or practice" constitutes unfair competition.

***Fraudulent Acts and Practices***

36.    Any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice under the UCL.

37.    Defendant has engaged, and continues to engage, in conduct that is likely to deceive members of the public.  This conduct includes, but is not limited to, representing that the Products contained "100% naturally sourced sunscreen ingredients," "naturally-sourced sunscreen ingredients" or "100% naturally sourced sunscreens," leading consumers to believe the

1    Products contained only natural ingredients.

2    38.    By committing the acts alleged above, Defendant has engaged in fraudulent

3    business acts and practices, which constitute unfair competition within the meaning of Business

4    & Professions Code § 17200.

5    **Unlawful Acts and Practices**

6    39.    The violation of any law constitutes an unlawful business practice under Business

7    & Professions Code § 17200.

8    40.    Defendant's conduct violates Section 5 of the Federal Trade Commission ("FTC")

9    Act, 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts

10   or practices in or affecting commerce.   By representing that the Products contain "100%

11   naturally sourced sunscreen ingredients," "naturally-sourced sunscreen ingredients" or "100%

12   naturally sourced sunscreens," when, in fact, the products contain numerous synthetic

13   ingredients, Defendant violated Section 5 of the FTC Act.

14   41.    Defendant's conduct also violates Cal. Health & Safety Code § 111765, which

15   prohibits the sale of any misbranded cosmetic product.  The Products, that bear labeling stating,

16   "100% naturally sourced sunscreen ingredients," "naturally-sourced sunscreen ingredients" or

17   "100% naturally sourced sunscreens" are "false and misleading in any particular" and are thus

18   misbranded cosmetics products as defined by Cal. Health & Safety Code § 111730.

19   42.    By violating the FTC Act and/or Cal. Health and Safety Code § 111765,

20   Defendant has engaged in unlawful business acts and practices which constitute unfair

21   competition within the meaning of Cal. Bus. & Prof. Code § 17200.

22   **Unfair Acts and Practices**

23   43.    Any business practice that offends an established public policy or is immoral,

24   unethical, oppressive, unscrupulous, or substantially injurious to consumers constitutes an

25   "unfair" practice under the UCL.

26   44.    Defendant has engaged, and continues to engage, in unfair business practices.

27   This conduct includes representing that the Products contain "100% naturally sourced sunscreen

28

ingredients," "naturally-sourced sunscreen ingredients" or "100% naturally sourced sunscreens" when, in fact, they contain numerous synthetic and unnatural ingredients.

45.     Defendant has engaged, and continues to engage, in conduct that violates the legislatively declared policies of the FTC Act against committing unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce.  Defendant gains an unfair advantage over its competitors, whose advertising for Products must comply with the FTC Act.

46.     Defendant's conduct, including misrepresenting the benefits of the Products, is substantially injurious to consumers.  Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid such a high price for the Products but for Defendant's false promotion that the Products are "naturally sourced." Consumers have thus overpaid for the Products and such injury is not outweighed by any countervailing benefits to consumers or competition.

47.     No benefit to consumers or competition results from Defendant's conduct.  Since consumers reasonably rely on Defendant's representations of the products and injury results from ordinary use of the Products, consumers could not have reasonably avoided such injury.

48.     By committing the acts alleged above, Defendant has engaged in unfair business acts and practices which constitute unfair competition within the meaning of the UCL.

49.      As a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiffs, the Class, and the California Subclass.

50.     An action for injunctive relief and restitution is specifically authorized under Cal. Bus. & Prof. Code §17203.

51.     Wherefore, Plaintiffs pray for judgment against Defendant, as set forth hereafter.

### COUNT II
**(Violation of the Consumers Legal Remedies Act (the "CLRA"),**
**Cal. Civ. Code § 1750 *et seq.* brought by All Plaintiffs on behalf of the Nationwide Class,**
**and brought by Plaintiffs Julie Fagan, Michael Fagan and Shelley Trinchero on behalf of**
**the California Subclass)**

52.     The foregoing allegations are realleged and incorporated by reference as if fully set forth herein.

53.   Plaintiffs and each member of the Class and California Subclass are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

54.   The purchases of the Products constitute "transactions" within the meaning of Cal. Civ. Code §1761(e) and the Products offered by Defendant constitute "goods" within the meaning of Cal. Civ. Code §1761(a).

55.   The acts and practices of Defendant as described above were intended to deceive Plaintiffs and members of the Class as described herein, and have resulted, and will result, in damages to Plaintiffs, the Class and the California Subclass.  These actions violated and continue to violate the CLRA in at least the following respects:

      a.   In violation of Section 1770(a)(5) of the CLRA, Defendant's acts and practices constitute representations that the Products have characteristics, uses and/or benefits which they do not;

      b.   in violation of Section 1770(a)(7) of the CLRA, Defendant's acts and practices constitute representations that the Products are of a particular standard, grade or quality which they are not; and

      c.   in violation of Section 1770(a)(9) of the CLRA, Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised.

56.   By reason of the foregoing, Plaintiffs and the Class have suffered an ascertainable loss and damages.

57.   By committing the acts alleged above, Defendant has violated the CLRA.

58.   In compliance with the provisions of Cal. Civ. Code § 1782, Plaintiffs provided written notice to Defendant on July 29, 2013 regarding their intention to amend the Complaint to seek damages under Cal. Civ. Code § 1750, *et seq.* unless Defendants took actions to remedy its violations.  On August 15, 2013 Defendant sent a letter to Plaintiffs rejecting their demands for relief and denying liability under the CLRA.

59.   Plaintiffs seek damages pursuant Cal. Civ. Code § 1781(a) on behalf of Plaintiffs,

FIRST AMENDED CLASS ACTION COMPLAINT

1   the Nationwide Class and the California Subclass resulting from Defendant's wrongful acts and

2   practices alleged herein and seek the payment of costs and attorneys' fees and any other relief

3   deemed appropriate and proper by the Court under Cal. Civ. Code § 1780.

4         60.     Wherefore, Plaintiffs pray for judgment against Defendant, as set forth hereafter.

5

**<u>COUNT III</u>**

**(Alternative Cause of Action Brought by All Plaintiffs on Behalf of the Count III Class, for Violations of Certain State Consumer Protection Laws Where Class Members Reside, Where Those State Laws Do Not Materially Conflict with the CLRA and the UCL)**

6

7

8         61.     Plaintiffs restate the foregoing allegations as if alleged fully herein.

9         62.     Plaintiffs state this alternative cause of action under the laws of the states of

10   residence of class members where these states' consumer protection laws do not materially differ

11   and are not in actual conflict with the law of California.  Though this Count is pled under these

12   various state laws, Plaintiffs assert that, under choice of law rules, the absence of an actual

13   conflict with California law requires the ultimate application of California law.

14         63.     The practices discussed above all constitute unfair competition or unfair,

15   unconscionable, deceptive, or unlawful acts or business practices in violation of the following

16   state consumer protection statutes:[63]

17

     a.    **Alaska Unfair Trade Practices and Consumer Protection Act**, Alaska Stat. § 45.50.471, *et seq.*;

18

19      b.    **Arkansas Deceptive Trade Practices Act**, Ark. Code Ann. § 4-88-101, *et seq.*;

20

     c.    **California Consumer Legal Remedies Act**, Cal. Civ. Code § 1750 *et seq.*, **California Unfair Competition Law,** Cal. Bus. & Prof. Code § 17200 *et seq.*;

21

22      d.    **Connecticut Unfair Trade Practices Act**, Conn. Gen. Stat. § 42-110a, *et seq.*;

23      e.    **Delaware Consumer Fraud Act**, Del. Code Ann. tit. 6, § 2511, *et seq.*;

24

     f.    **District of Columbia Consumer Protection Procedures Act,** D.C. Code § 28-3901, *et seq.*;

25

26

27

28

---

[63] There is no conflict between these state statutes and the CLRA and UCL because these state statutes (1) do not require reliance by unnamed class members; (2) do not require scienter; and (3) allow class actions.

21

g. **Florida Deceptive and Unfair Trade Practices Act,** Fla. Stat. § 501.201, *et seq.*;

h. **Hawaii Unfair and Deceptive Practices Act**, Hawaii Rev. Stat. § 480-1, *et seq.*;

i. **Illinois Consumer Fraud and Deceptive Business Practices Act**, 815 Ill. Comp. Stat. § 505/1, *et seq.*;

j. **Kentucky Consumer Protection Act**, Ky. Rev. Stat. Ann. § 367.110, *et seq.*;

k. **Maine Unfair Trade Practices Act**, Me. Rev. Stat. tit. 5, § 205-A, *et seq.*;

l. **Maryland Consumer Protection Act**, Md. Code Ann., Com. Law § 13-101, *et seq.*;

m. **Massachusetts Regulation of Business Practices for Consumers' Protection Act**, Mass. Gen. Laws Ann. ch. 93A, § 1, *et seq.*;

n. **Michigan Consumer Protection Act,** Mich. Comp. Laws § 445.901, *et seq.*;

o. **Missouri Merchandising Practices Act**, Mo. Rev. Stat. § 407.010, *et seq.*;

p. **Nebraska Consumer Protection Act**, Neb. Rev. Stat. § 59-1601, *et seq.*;

q. **New Hampshire Consumer Protection Act**, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*;

r. **New Jersey Consumer Fraud Act**, N.J. Stat. Ann. § 56:8-1, *et seq.*;

s. **New York Deceptive Acts and Practices Act**, N.Y. Gen. Bus. Law § 349, *et seq.*;

t. **North Carolina Unfair Trade Practice Act**, N.C. Gen. Stat. § 75-1.1, *et seq.*;

u. **Ohio Consumer Sales Practice Act**,  Ohio Rev. Code Ann. § 1345.01, *et seq.*;

v. **Rhode Island Unfair Trade Practices and Consumer Protection Act**, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

w. **Vermont Consumer Fraud Act**, Vt. Stat. Ann. tit. 9, § 2451, *et seq.*;

x. **Washington Consumer Protection Act**, Wash. Rev. Code § 19.86.010, *et seq.*;

y. **West Virginia Consumer Credit and Protection Act,** W. Va. Code Ann. § 46A-6-101, *et seq.*; and

z. **Wisconsin Deceptive Trade Practices Act**, Wis. Stat. § 100.18, *et seq.*

64.     Plaintiffs and the Count III Class are entitled to recover damages and receive appropriate equitable relief, as alleged below.

## COUNT IV

**(Alternative Cause of Action Brought by All Plaintiffs on Behalf of the Count IV Class, for Violations of Certain State Consumer Protection Laws Where Class Members Reside, Where Those State Laws Do Not Materially Conflict with the CLRA and the UCL)**

65.     Plaintiffs restate the foregoing allegations as if alleged fully herein.

66.     Plaintiffs state this alternative cause of action under the laws of the states of residence of class members where these states' consumer protection laws do not materially differ and are not in actual conflict with the law of California.  Though this Count is pled under these various state laws, Plaintiffs assert that, under choice of law rules, the absence of an actual conflict with California law requires the ultimate application of California law.

67.     The practices discussed above all constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of the following state consumer protection statutes:[64]

a.  **Alabama Deceptive Trade Practices Act**, Ala. Code § 8-19-1, *et seq*.;

b.  **Alaska Unfair Trade Practices and Consumer Protection Act**, Alaska Stat. § 45.50.471, *et seq*.;

c.  **Arkansas Deceptive Trade Practices Act**, Ark. Code Ann. § 4-88-101, *et seq.*;

d.  **California Consumer Legal Remedies Act**, Cal. Civ. Code § 1750, *et seq*., **California Unfair Competition Law,** Cal. Bus. & Prof. Code § 17200, *et seq*.;

e.  **Connecticut Unfair Trade Practices Act**, Conn. Gen. Stat. § 42-110a, *et seq.*;

f.  **Delaware Consumer Fraud Act**, Del. Code Ann. tit. 6, § 2511, *et seq*.;

g.  **District of Columbia Consumer Protection Procedures Act,** D.C. Code § 28-3901, *et seq.*;

---

[64] These state statutes do not materially conflict with the CLRA and the UCL.  The statutes include those listed in Count III as well as additional states whose statutes, like the CLRA and the UCL, require neither reliance by unnamed class members nor scienter, but do not permit class actions.  Under *Shady Grove Orthopedic Assoc's v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2010), class actions may be brought under these state statutes in federal court under Federal Rules of Civil Procedure Rule 23.

h. **Florida Deceptive and Unfair Trade Practices Act,** Fla. Stat. § 501.201, *et seq.*;

i. **Hawaii Unfair and Deceptive Practices Act**, Hawaii Rev. Stat. § 480-1, *et seq.*;

j. **Illinois Consumer Fraud and Deceptive Business Practices Act**, 815 Ill. Comp. Stat. § 505/1, *et seq.*;

k. **Kentucky Consumer Protection Act**, Ky. Rev. Stat. Ann. § 367.110, *et seq.*;

l. **Louisiana Unfair Trade Practices and Consumer Protection Law**, La. Rev. Stat. Ann. § 51:1401, *et seq.*;

m. **Maine Unfair Trade Practices Act**, Me. Rev. Stat. tit. 5, § 205-A, *et seq.*;

n. **Maryland Consumer Protection Act**, Md. Code Ann., Com. Law § 13-101, *et seq.*;

o. **Massachusetts Regulation of Business Practices for Consumers' Protection Act**, Mass. Gen. Laws Ann. ch. 93A, § 1 *et seq.*;

p. **Michigan Consumer Protection Act,** Mich. Comp. Laws § 445.901 *et seq.*;

q. **Missouri Merchandising Practices Act**, Mo. Rev. Stat. § 407.010, *et seq.*;

r. **Montana Unfair Trade Practices and Consumer Protection Act,** Mont. Code Ann. § 30-14-101, *et seq.*;

s. **Nebraska Consumer Protection Act**, Neb. Rev. Stat. § 59-1601, *et seq.*;

t. **New Hampshire Consumer Protection Act**, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*;

u. **New Jersey Consumer Fraud Act**, N.J. Stat. Ann. § 56:8-1, *et seq.*;

v. **New York Deceptive Acts and Practices Act**, N.Y. Gen. Bus. Law § 349, *et seq.*;

w. **North Carolina Unfair Trade Practice Act**, N.C. Gen. Stat. § 75-1.1, *et seq.*;

x. **Ohio Consumer Sales Practice Act**,  Ohio Rev. Code Ann. § 1345.01, *et seq.*;

y. **Rhode Island Unfair Trade Practices and Consumer Protection Act**, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

z. **South Carolina Unfair Trade Practices Act**, S.C. Code Ann. § 39-5-10, *et seq.*;

aa. **Tennessee Consumer Protection Act of 1977**, Tenn. Code Ann. § 47-18-101, *et seq.*;

bb. **Vermont Consumer Fraud Act**, Vt. Stat. Ann. tit. 9, § 2451, *et seq.*;

cc. **Washington Consumer Protection Act**, Wash. Rev. Code § 19.86.010, *et seq.*;

dd. **West Virginia Consumer Credit and Protection Act,** W. Va. Code Ann. § 46A-6-101, *et seq.*; and

ee. **Wisconsin Deceptive Trade Practices Act**, Wis. Stat. § 100.18, *et seq.*

68.   Plaintiffs and the Count IV Class are entitled to recover damages and receive appropriate equitable relief, as alleged below.

<u>**COUNT V**</u>
**(Violation of the Michigan Consumer Protection Act ("MCPA"),**
**Mich Comp. Laws Ann. § 445.901, *et seq.* brought by**
**Plaintiff Amy Sapeika on behalf of the Michigan Subclass)**

69.   The allegations in Paragraphs 1 through 33 are realleged and incorporated by reference as if fully set forth herein.

70.   The MCPA prohibits "unfair, unconscionable, or deceptive methods, acts, and practices in the conduct of trade of commerce."  Mich Comp. Laws Ann. § 445.903 (1).

71.   Defendant is engaged in trade or commerce within the meaning of Mich Comp. Laws Ann. § 445.902 (g).

72.   Defendant, by misrepresenting that the Products contain only "naturally-sourced" ingredients, has engaged in the following acts and practices prohibited by Mich Comp. Laws Ann. § 445.903(1):

....

(c)   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have;

….

(e)   Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

….

(bb)   Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it really is.

73.     Plaintiff Sapeika would not have purchased the Products at all, or would not have paid such a high price for the Products, but for Defendant's misleading representation that the Products contained "100% naturally sourced sunscreen ingredients" or "naturally-sourced sunscreen ingredients."  Plaintiff has thus suffered a loss as a direct result of Defendant's misrepresentations.

74.     Wherefore, Plaintiff Sapeika prays for judgment against Defendant, as set forth hereafter.

## COUNT VI

**(Brought by Plaintiff Melissa Pennellatore on Behalf of the Massachusetts Subclass, for Violations of Massachusetts Regulation of Business Practices for Consumers Protection Act, Mass. Gen. Laws Ann. ch. 93A)**

1.     The allegations in Paragraphs 1 through 33 are realleged and incorporated by reference as if fully set forth herein.

2.     Plaintiff brings this count individually and as a class action pursuant Federal Rules of Civil Procedure Rule 23 on behalf of herself and the Massachusetts Subclass.

3.     Defendant is engaged in trade or commerce in the State of Massachusetts because Defendant offers for sale and distributes the Products in the State of Massachusetts.

4.     On July 26, 2013 Plaintiff mailed a written demand for relief to Neutrogena Corporation pursuant to Mass. Gen. Laws Ann. ch. 93A, § 9(3), identifying the claimant, the unfair and deceptive practice and the injury suffered.  On August 15, 2013 Defendant sent Plaintiff a letter rejecting her demands and denying liability under Mass. Gen. Laws Ann. ch. 93A.

5.     By representing that the Products contain "100% naturally sourced sunscreen ingredients," "100% naturally sourced sunscreens" or "naturally-sourced sunscreen ingredients," when the Products contain unnatural synthetic ingredients, Defendant has engaged in unfair methods of competition and unfair and deceptive acts and practices within the meaning of Mass. Gen. Laws Ann. ch. 93A, § 2(a).

FIRST AMENDED CLASS ACTION COMPLAINT

6.      Plaintiff suffered an injury as a result of Defendant's unlawful acts and practices by paying a premium for the Products over comparable products that are not represented to contain naturally sourced ingredients.

7.      Wherefore, Plaintiff is entitled to damages and other appropriate relief, as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment and relief against Defendant as follows:

A.      for an Order certifying the Classes and Subclasses described herein and appointing Plaintiffs as Class Representatives and their attorneys as Class Counsel;

B.      that the Court preliminarily and permanently enjoin Defendant from conducting its business through the unlawful, unfair or fraudulent business acts or practices, untrue and misleading advertising and other violations of law described in this Complaint;

C.      that the Court order Defendant to notify each and every individual and/or business who purchased the Products of the pendency of the claims in this action in order to give such individuals and businesses an opportunity to obtain restitution from Defendant;

D.      that the Court order Defendant to pay restitution to restore to all affected persons all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue or misleading advertising;

E.      that the Court order Defendant to disgorge all monies wrongfully obtained and all revenues and profits derived by Defendant as a result of its acts or practices as alleged in this Complaint;

F.      that the Court award damages to Plaintiffs and Nationwide Class, the California Subclass, and, in the alternative, the Count III and Count IV Classes pursuant to Civ. Code § 1781(a);

G.      that the Court grant Plaintiffs their reasonable attorneys' fees and costs of suit pursuant to Cal. Civ. Proc. Code § 1021.5, Cal. Civ. Code § 1780(e), the common fund doctrine and/or any other appropriate legal theory;

H.     for pre- and post- judgment interest on any monetary damages;

I.     with respect to the Massachusetts Subclass: actual damages, appropriate equitable relief, pre- and post-judgment interest, double or treble damages and attorneys' fees and costs;

J.     with respect to the Michigan Subclass: actual damages, pre- and post-judgment interest; attorneys' fees and costs, and appropriate equitable relief; and

K.     that the Court grant such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

DATED:   September 13, 2013

Elizabeth P. Lin (State Bar No. 174663)
**THE LIN LAW FIRM, APLC**
2705 S. Diamond Bar Blvd., Suite 398
Diamond Bar, CA 91765
Telephone: (909) 595-5522
Facsimile: (909) 595-5519
elizabethl@thelinlawfirm.com

Mark P. Kindall (State Bar No. 138703)
Robert A. Izard (admitted *pro hac vice*)
Jeffrey S. Nobel (admitted *pro hac vice*)
Nicole A. Veno (admitted *pro hac vice*)
**IZARD NOBEL LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290

Ronen Sarraf (admitted *pro hac vice*)
Joseph Gentile (admitted *pro hac vice*)
**SARRAF GENTILE LLP**
450 Seventh Avenue, Suite 1900
New York, NY 10123
Telephone: (212) 868-3610
Fax: (212) 918-7967
ronen@sarrafgentile.com
joseph@sarrafgentile.com

*Attorneys for Plaintiffs*

FIRST AMENDED CLASS ACTION COMPLAINT

**AFFIDAVIT OF JULIE FAGAN**

I, JULIE FAGAN, submit this Affidavit pursuant to § 1780(d) of the California Code of Civil Procedure, Consumer Legal Remedies Act, and declare the following:

1.  I am a named plaintiff in this litigation.

2.  If called as a witness I could and would competently testify as to the matters included herein.

3.  I am informed and believe that the Defendant, Neutrogena Corporation, is a resident of this District and conducts substantial business activity in the State of California and within this District, and therefore this District is a proper place for trial of this action.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed this 2 1 day of August, 2013 in Sunnyvale, California.

JULIE FAGAN

## CERTIFICATE OF SERVICE

I am over the age of 18 and not a party to this case.  My business address is The Lin Law

Firm, APLC, 2705 S. Diamond Bar Blvd., Suite 398, Diamond Bar, CA  91765.

I hereby certify that on September 13, 2013, a true and correct copy of the foregoing

document entitled **FIRST AMENDED CLASS ACTION COMPLAINT** was served

electronically on the following parties who have agreed to accept service by electronically means

pursuant to Fed. R. Civ. P. 5(b)(2)(E).

Harold P Weinberger
Kramer Levin Naftalis and Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
212-715-9132
Fax: 212-715-8000
Email: hweinberger@kramerlevin.com

Lisa Kobialka
Kramer Levin Naftalis and Frankel LLP
990 Marsh Road
Menlo Park, CA 94025
650-752-1700
Fax: .650-752-1811
Email: lkobialka@kramerlevin.com

Eileen M Patt
Kramer Levin Naftalis and Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
212-715-9347
Fax: 212-715-8000
Email: epatt@kramerlevin.com

Robert M Swerdlow
O'Melveny and Myers LLP
400 South Hope Street 15th Floor
Los Angeles, CA 90071-2899
213-430-6000
Fax: 213-430-7274
Email: rswerdlow@omm.com

_____
Elizabeth P. Lin