Elizabeth P. Lin (State Bar No. 174663)
**THE LIN LAW FIRM, APLC**
2705 S. Diamond Bar Blvd., Suite 398
Diamond Bar, CA 91765
Telephone: (909) 595-5522
Facsimile: (909) 595-5519
elizabethl@thelinlawfirm.com

Mark P. Kindall (State Bar No. 138703)
Robert A. Izard (admitted *pro hac vice*)
Jeffrey S. Nobel (admitted *pro hac vice*)
Nicole A. Veno (admitted *pro hac vice*)
**IZARD NOBEL LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
mkindall@izardnobel.com
rizard@izardnobel.com
jnobel@izardnobel.com
nveno@izardnobel.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE FAGAN, MICHAEL FAGAN, MELISSA PENNELLATORE, AMY SAPEIKA and SHELLEY TRINCHERO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NEUTROGENA CORPORATION,<br><br>Defendants. | Case No.:  EDCV 13-01316 SVW (OPx)<br><br>CLASS ACTION<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT NEUTROGENA CORPORATION'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date:    January 13, 2014<br>Time:    1:30 P.M.<br>Judge:   Stephen V. Wilson<br>Place:   Courtroom 217/6 |

# TABLE OF CONTENTS

I.     INTRODUCTION .......................................................................................... 1

II.    STANDARD OF REVIEW ........................................................................... 2

III.   ARGUMENT ................................................................................................ 2

       A.     Plaintiffs Have Properly Pled Their Consumer Protection
              Claims .............................................................................................. 2

              1.     Plaintiffs Have Pled Defendant's Misrepresentation ................... 2

              2.     Defendant's Argument That its Misrepresentations Are
                     Not Misleading as a Matter of Law is Without Merit ................. 4

       B.     Plaintiffs' Claims are Not Preempted By FDA Regulation or
              Barred By the Doctrine of Primary Jurisdiction .................................. 9

              1.     Plaintiffs' State Law Comnsumer Protection Claims
                     Are Not Subject to Preemption .................................................... 10

              2.     Plaintiffs' State Law Consumer Protection Claims
                     Are Not Barred By the Doctribe of Primary Jurisdiction ........... 12

       C.     Plaintiffs Sufficiently Plead Claims Under the UCL, MCPA
              and Chapter 93A ................................................................................ 15

              1.     Plaintiffs Proplery Allage a Claim Under the UCL .................... 15

              2.     Plaintiffs Properly Allege a Claim Under the MCPA ................. 19

IV.    CONCLUSION .......................................................................................... 21

i

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................... 2

*Astiana v. Ben & Jerry's Homemade, Inc.,*
    Nos. C 10-4387 PJH, C 10-4937 PJH, 2011 WL 2111796 (N.D. Cal.
    May 26, 2011) ................................................................................................... 11

*Astiana v. Dreyer's Grand Ice Cream, Inc.,*
    Nos. C-11-2910 EMC, C-11-3164 EMC, 2012 WL 2990766 (N.D.
    Cal. July 20, 2010) ................................................................................. 2, 3, 8, 9

*Astiana v. Hain Celestial Grp., Inc.,*
    905 F. Supp. 2d 1013 (N.D. Cal. 2012) ........................................................... 13

*Bates v. Dow Agrosciences LLC,*
    544 U.S. 431 (2005) ......................................................................................... 10

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................... 2

*Bruton v. Gerber Prod. Co.,*
    No. 12-CV-024120LHK, 2013 WL 4833413 (N.D. Cal. Sept. 6, 2013) ............ 7

*Chavez v. Nestle USA, Inc.,*
    511 Fed. Appx. 606 (9th Cir. 2013) ........................................................... 12, 14

*Colucci v. ZonePerfect Nutrition Co.,*
    No. 12-2907-SC, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) ................... 4, 5

*Crozier v. Johnson & Johnson Consumer Cos.,*
    901 F. Supp. 2d 494 (D.N.J. 2012) .................................................................. 11

*Davis v. HSBC Bank Nev., N.A.,*
    691 F.3d 1152 (9th Cir. 2012) ......................................................................... 17

*Flanagan v. Altria Group, Inc.,*
    No. 05-71697, 2005 WL 2769010 (E.D. Mich. Oct. 25, 2005) ....................... 20

ii

*Fleming v. Pickard*,
   581 F.3d 922 (9th Cir. 2009) ................................................................ 2

*Fox v. Sherwin-Williams Co.*,
   No. 287999, 2010 WL 46905 (Mich. App. Jan. 7, 2010) ................................. 8

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ................................................................ 5

*Good v. Altria Group, Inc.*,
   501 F.3d 29 (1st Cir. 2007) ................................................................ 20

*Hairston v. South Beach Beverage Co.*,
   No. CV-12-1429-JFW (DTBx), 2012 WL 1893818 (C.D. Cal. May
   18, 2012) ................................................................................... 7

*Herron v. Best Buy Co.*,
   924 F. Supp. 2d 1161 (E.D. Cal. 2013) ................................................. 19

*Herskowitz v. Apple, Inc.*,
   Nos. 12-CV-0213-LHK, 12-CV-03124-LHK, 2013 WL 1615897
   (N.D. Cal. Apr. 15, 2013) ................................................................ 17

*In re Epogen & Aranesp Offlabel Marketing & Sales Practices Litig.*,
   590 F. Supp. 2d 1282 (C.D. Cal. 2008) .......................................... 10, 11

*Ivie v. Kraft Foods Global, Inc.*,
   No. C-12-02554-RMW, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013) .............. 11

*Janney v. Mills*,
   No. C 12-3919 PJH, 2013 WL 1962360 (N.D. Cal. May 10, 2013) ........... 12, 14

*Lam v. General Mills, Inc.*,
   859 F. Supp. 2d 1097 (N.D. Cal. 2012) ................................................. 9

*Lesley v. Ocwen Fin. Corp.*,
   No. SA CV 12-1737-DOC(JPRx), 2013 WL 990668 (C.D. Cal. March
   13, 2013) .......................................................................... 16, 17, 19

*Liss v. Lewiston-Richards, Inc.*,
   732 N.W.2d 514 (2007) ................................................................... 20

iii

*Lockwood v. Conagra Foods, Inc.*,
  597 F. Supp. 2d 1028 (N.D. Cal. 2009) ................................................. 11, 13, 14

*Parker v. J.M. Smucker Co.*,
  No. C13-0690 SC, 2013 WL 4516156 (N.D. Cal. Aug. 23, 2013) ........... 3, 5, 14

*POM Wonderful LLC v. Coca-Cola Co.*,
  679 F.3d 1170 (9th Cir. 2012) ........................................................................... 13

*Red v. Kraft Foods, Inc.*,
  No. CV 10-1028-GW (AGRx), 2012 WL 5504011 (C.D. Cal. Oct. 25,
  2012) ................................................................................................................... 6

*Rice v. Sunbeam Prods., Inc.*,
  No. CV 12-7923-CAS (AKWx), 2013 WL 146270 (C.D. Cal. Jan. 7,
  2013) ................................................................................................................. 18

*Smith v. Globe Life Insurance Co.*,
  597 N.W.2d 28 (Mich. 1999)) ......................................................................... 20

*Vicuna v. Alexia Foods, Inc.*,
  No. C11-6119PJH, 2012 WL 1497507 (N.D. Cal. Apr. 27, 2012) .................. 3, 5

*Von Koenig v. Snapple Beverage Corp.*,
  713 F. Supp. 2d 1066 (E.D. Cal. 2010) ............................................................ 4, 9

*Williams v. Gerber Products Co.*,
  552 F.3d 934 (9th Cir. 2008) ...................................................... 4, 5, 8-9, 14, 18

*Won Kyung Hwang v. Ohso Clean, Inc.*,
  No. C-12-06355 JCS, 2013 WL 1632697 (N.D. Cal. Apr. 16,
  2013) ..................................................................................................... 4, 10, 13-14

**Statutes, Regulations, Rules & Miscellaneous**

15 U.S.C. § 45 ("FTCA") ....................................................................................16-7

21 U.S.C. §§ 352, 362 ("FDCA") ..................................................................... 12, 20

58 Fed. Reg. 2302-01, 2407 (Jan. 6, 1993) ........................................................... 14

iv

Cal. Bus. & Prof. Code §17200 *et seq.* ("UCL") ..............................................15-19

Cal. Civ. Code § 1750 *et seq.* ("CLRA") .............................................................. 15

Cal. Health & Safety Code § 111765 ("Sherman Law") ...................................15-16

Mass. Gen. Laws Ann. Ch. 93A ............................................................................. 15

Mich. Comp. Laws Ann. § 445.901 *et seq.* ("MCPA") ....................................19-20

Appellants' Motion to take Judicial Notice, *Astiana v. Hain Celestial Group* (No. 12-cv-17596) (9th Cir. March 22, 2013) ("FDA Letter")  .............13-14

v

## I.   INTRODUCTION

Plaintiffs Julie Fagan, Michael Fagan, Melissa Pennellatore, Amy Sapeika and Shelly Trinchero ("Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully submit this memorandum in opposition to defendant Neutrogena Corporation's ("Neutrogena" or "Defendant") Motion to Dismiss First Amended Class Action Complaint (the "Motion") and incorporated Memorandum of Points and Authorities ("Def. Mem.") [Dkt. No. 38].

Defendant misrepresented that four of its sunscreen products (the "Products") are comprised entirely of "naturally sourced" sunscreen ingredients, when in truth they include synthetic (and harmful) ingredients.  Plaintiffs allege that Defendant's statement that these sunscreen Products are "naturally sourced" constitutes a representation to a reasonable consumer that the sunscreen Products consist *only* of "natural" ingredients.  Based on Defendant's misrepresentations, Plaintiffs and members of the putative class paid premiums above what the market charges for similar products that do *not* represent that they are "100% naturally sourced."

Defendant does not deny that the Products contain the unnatural chemical ingredients identified in the First Amended Class Action Complaint [Dkt. No. 33] (the "Complaint").  Instead, Defendant wrongly argues that, as a matter of law, no reasonable consumer would be misled by its misrepresentations.  *See* Def. Mem. at 10-16.  Defendant also erroneously argues that, although the FDA has expressly disclaimed any intent to define the word "natural" in the context of cosmetics, this Court should simply allow Defendant to (falsely) use the word "natural," regardless of whether that representation is false or misleading and with no regard for state consumer protection laws, solely because the FDA regulates some aspects of cosmetics labeling.  *See* Def. Mem. at 4-10.  Finally, Defendant erroneously

1

argues that the Complaint fails to meet the pleading standards of some (but not all) of Plaintiffs' specific state law claims.   *See* Def. Mem. at 16-23.   Plaintiffs respectfully submit that Defendant's arguments are uniformly without merit and request that the Court deny Defendant's Motion in full.

## II.   STANDARD OF REVIEW

On a motion to dismiss, the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard,* 581 F.3d 922, 925 (9th Cir. 2009).   A complaint should be sustained so long as it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   The plaintiff only needs to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Astiana v. Dreyer's Grand Ice Cream, Inc.,* Nos. C-11-2910 EMC, C-11-3164 EMC, 2012 WL 2990766, at *2 (N.D. Cal. July 20, 2010) (citing *Ashcroft*).

## III.   ARGUMENT

### A.   Plaintiffs Have Properly Pled Their Consumer Protection Claims

#### 1.   Plaintiffs Have Pled Defendant's Misrepresentation

Plaintiffs' claim concerning Defendant's sunscreen Products is straightforward.   Defendant falsely or misleadingly represents on the Principal Display Panel ("PDP") of four of its sunscreen Products that those sunscreens consist entirely of natural ingredients, because the PDPs incorrectly state that the sunscreen Products are "100% naturally sourced sunscreens" or consist of "100% naturally sourced sunscreen ingredients" or "naturally-sourced sunscreen

2

ingredients." ¶¶1, 16.[1]  But "natural" means "existing in or produced by nature; not artificial."  ¶1 n.1.  Accordingly, Defendant's representation that the Products are "naturally sourced" is false (¶¶3, 5, 18-20): the Products include several *un*natural ingredients, including chemicals linked, *inter alia,* to cancer, neural and fetal toxicity. and allergic reactions.  ¶22.  As a result, Defendant's representations on the Products' PDPs are misleading to a reasonable consumer because a reasonable consumer would understand the PDP to mean that all of the ingredients in the Products are "naturally sourced," and would not know that the Products contain *un*natural (much less toxic) ingredients.

Indeed, courts have routinely denied motions to dismiss and sustained similar claims that it is misleading to a reasonable consumer to represent on a label that a product is "natural" when it actually includes unnatural ingredients.  *See, e.g., Parker v. J.M. Smucker Co.,* No. C13-0690 SC, 2013 WL 4516156, at *6 (N.D. Cal. Aug. 23, 2013) ("reasonable consumer issue cannot be resolved as a matter of law" where "Plaintiff has alleged that a reasonable consumer would read the 'All Natural' label, assume that such a product contains no … chemically altered ingredients, and would then be misled if the product did in fact contain such things"); *Vicuna v. Alexia Foods, Inc.,* No. C11-6119PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) ("Because the question whether a reasonable consumer would likely be deceived by the designation "All Natural" is a factual dispute, the court finds that these claims cannot be resolved at this stage of the litigation"); *Astiana v. Dreyer's Grand Ice Cream, Inc.,* Nos. C-11-2910 EMC, C-11-3164 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2010) (denying motion to dismiss because court "cannot say at this juncture that it is implausible"

---

[1]  Unless otherwise specified, all citations to "¶_" herein are in reference to the First Amended Class Action Complaint (the "Complaint").

**PLAINTIFFS' OPPOSITION TO DEFENDANT NEUTROGENA CORPORATION'S
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

that "a reasonable consumer could interpret "All Natural Flavors" to mean "all natural ingredients"); *Won Kyung Hwang v. Ohso Clean, Inc.,* No. C-12-06355 JCS, 2013 WL 1632697, at *18 (N.D. Cal. Apr. 16, 2013); *Colucci v. ZonePerfect Nutrition Co.,* No. 12-2907-SC, 2012 WL 6737800, at *7-9 (N.D. Cal. Dec. 28, 2012); *Von Koenig v. Snapple Beverage Corp.,* 713 F. Supp. 2d 1066, 1079 (E.D. Cal. 2010). Given Plaintiffs' specific, factual allegations that Defendant's representations are false or misleading (because in truth the Products contain synthetic ingredients), Plaintiffs have properly alleged that Defendant's representations would mislead a reasonable consumer.

## 2. Defendant's Argument That its Misrepresentations Are Not Misleading as a Matter of Law is Without Merit

Defendant's argument that Plaintiffs have failed to allege a misrepresentation on the Product labels (Def. Mem. at 10-16) is without merit. A consumer misrepresentation claim may only be dismissed when *no* reasonable consumer would be misled. *See Williams v. Gerber Products Co.,* 552 F.3d 934, 939 (9th Cir. 2008) (reversing dismissal where "the statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural" and so district court erred when it held "no reasonable consumer" could be misled). Here, Defendant does not deny that it represented on the PDPs that the sunscreens (or sunscreen ingredients) are "naturally sourced," or that the Products in fact include synthetic, *un*natural ingredients. Rather, Defendant erroneously argues that this Court should conclude, as a matter of law, that no reasonable consumer would understand Defendant's representation to mean that the sunscreen Products consist entirely of natural ingredients. Def. Mem. at 15-16. Defendant further erroneously argues that every reasonable consumer would somehow

4

understand Defendant's representations to mean that only the "active" ingredients in the sunscreen Products are "natural," and that the "inactive" ingredients are synthetic.  Def. Mem. at 12-13.

As a preliminary matter, Defendant's arguments are without merit because the meaning that a reasonable consumer would ascribe to Defendant's representation, and whether that consumer would be misled, are quintessential factual issues that cannot be resolved on a motion to dismiss:

> The Ninth Circuit has made plain that [state consumer protection law] claims, like those asserted by Plaintiffs here, turn on the application of a 'reasonable consumer' standard.  Defendant's argument as to plausibility is, at bottom, an argument that no reasonable consumer is likely to be deceived by the labeling of its nutrition bars [as "All Natural"].  But, as the Ninth Circuit and numerous courts have held, that issue is generally not amenable to resolution on the pleadings because it involves issues of fact.

*Colucci,* 2012 WL 6737800, at *7 (citations omitted); *see Williams,* 552 F.3d at 938-40 ("California courts, however, have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on a demurrer"); *Parker,* 2013 WL 4516156, at *6 (issue of whether "a reasonable consumer would read the 'All Natural' label" to mean that product "contains no bioengineered or chemically altered ingredients . . . cannot be resolved as a matter of law"); *Vicuna,* 2012 WL 1497507, at *2 ("the question whether a reasonable consumer would likely be deceived by the designation 'All Natural' is a factual dispute [that] cannot be resolved" on a motion to dismiss).[2]

---

[2]  Although Plaintiffs do not disagree with the general "reasonable consumer" standard articulated by the cases cited by Defendant (Def. Mem. at 11-12), Plaintiffs note that those cases arise under entirely different facts that have no relevance whatsoever to Plaintiffs' claims here.  For example, in *Freeman v. Time, Inc.,* 68 F.3d 285 (9th Cir. 1995), plaintiff alleged that he was misled by a

5

Even assuming, *arguendo,* that it is proper to resolve Defendant's argument on a motion to dismiss, Defendant's argument (that all reasonable consumers, as a matter of law, would understand that the "100% naturally sourced sunscreen ingredients" representation applies only to the sunscreen Products' "active" sunscreen ingredients) defies both grammar and logic.   Defendant's argument ignores the fact that the Products in their entirety *are* only sunscreens, and that Defendant represented that the sunscreen Products consisted of "100% naturally sourced sunscreen ingredients."  Because the entire Product is a *sunscreen*, there is, at the very least, a factual question whether a reasonable consumer would understand Defendant's representation to mean that all of the ingredients in the sunscreen Products were "100% natural."[3]   ¶¶3, 8-12, 17-18 (alleging reasonable consumer's understanding).[4]

_____

sweepstakes letter which declared (in a small but legible font) "If you return the grand prize winning number, we'll officially announce that," and then in larger letters, "MICHAEL FREEMAN HAS WON $1,666,675.00 AND PAYMENT IS SCHEDULED TO BEGIN."  *Id* at 287.  The court rejected the plaintiffs' claim that he should be able to ignore the clear, unambiguous and fully disclosed rules of the sweepstakes simply because they was in a slightly smaller (but still legible) font.  *Id.* at 290 (emphasis added).

[3]   Similarly, Defendant's argument that all reasonable consumers understand the difference between "active" and "inactive" ingredients is not only untrue but, at most, a question of fact that cannot be resolved on a motion to dismiss.  Moreover, the labels did not represent that only "active" sunscreen ingredients were "naturally sourced."

[4]   Defendant's reliance on *Red v. Kraft Foods, Inc.,* No. CV 10-1028-GW (AGRx), 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) (Def. Mem. at 13) is misplaced.  In *Red*, plaintiff alleged that a label on a box of crackers that stated "made with real vegetables" was misleading because the crackers did not contain a "significant" enough amount of vegetable content.  In rejecting plaintiff's claims, the court concluded that "a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables."  *Id.* at *4.  Unlike in *Red,* there is no basis for the court to conclude, as a matter of law, that all reasonable

6

Indeed, Defendant clearly understands that the phrase "naturally sourced" communicates to reasonable sunscreen consumers that the *entire product* consists of "natural" ingredients.[5]  Defendant touts the sunscreen Products as being "100% naturally sourced sunscreens" and consisting of "naturally sourced sunscreen ingredients," *and charges consumers more for them* than for comparable products that make no such claims.  ¶24.  A reasonable consumer would not pay a premium for a purportedly natural product if he or she knew it actually included so-called "inactive" ingredients that are *not* natural and that, in fact, are linked to cancer (¶¶22(a)(iii), 22(a)(xv), 22(a)(xvi), 22(a)(xx), 22(a)(xxiii), 22(b)(i), 23(c)(i)) or other serious ailments (¶¶23(a)(xiv), 22(a)(xxi), 22(b)(v), 22(d)(iii)).

---

consumers would know that the ingredients of Defendant's products are not natural.

[5]  The two cases relied upon by Defendant are readily distinguishable, and, indeed, support Plaintiff's argument here.  In *Bruton v. Gerber Prod. Co.,* No. 12-CV-024120LHK, 2013 WL 4833413 (N.D. Cal. Sept. 6, 2013) (Def. Mem. at 15-16), the court expressly recognized that a representation that a product is "natural" could be misleading to a reasonable consumer.  *Id.* at *21. However, because the representation at issue in *Bruton* was that the product was "made *with* 100% natural fruit" (emphasis added), the court concluded that a reasonable consumer would understand that "natural fruit" was *one* ingredient in the food product, not the *only* ingredient.  *Id.*  By contrast, the label here does not just say the Products are made with one particular natural ingredient, but that the Products are made solely from "100% naturally sourced sunscreen ingredients."  In *Hairston v. South Beach Beverage Co.,*  No. CV-12-1429-JFW (DTBx), 2012 WL 1893818 (C.D. Cal. May 18, 2012) (Def. Mem. at 14-15), plaintiff alleged that an "all natural with vitamins" food label misleadingly represented that the *vitamins* were natural.  In dismissing the claim, the court held that the "with vitamins" language was separate from the "all natural" representation.  *Id.* at *5.  Here, Defendant's label represents that the sunscreen Products are composed only of "100% naturally sourced sunscreen ingredients," not "100% naturally sourced sunscreen ingredients with other ingredients that are not naturally sourced."

7

---

Defendant's argument that, as a matter of law, the ingredient list on the back of each Product somehow immunizes Defendant from its misrepresentations (*see* Def. Mem. at 13-14) is incorrect.   First, simply listing ingredients without also disclosing that those ingredients are *un*natural does not in any way inform the consumer that the product includes synthetic ingredients.   *See, e.g., Dreyer's Grand Ice Cream,* 2012 WL 2990766, at * 7 (denying motion to dismiss; although glycerin ingredient listed on label, "nothing about the label disclosed that the glycerin" was produced through a synthetic process).[6] Second, even if baldly listing the ingredients somehow alerted reasonable consumers that some of the ingredients in the "100% naturally sourced sunscreen" Products were *not* natural (which it clearly does not here), controlling Ninth Circuit law has directly rejected Defendant's argument that the ingredient list on the back of a product label is sufficient to evade liability for misrepresentations on the front of the label:

> We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. . . .   We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.   Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

---

[6]   Accordingly, Defendant's reliance on *Fox v. Sherwin-Williams Co.,* No. 287999, 2010 WL 46905 (Mich. App. Jan. 7, 2010) (Def. Mem. at 12), is misplaced.   In *Fox,* the court dismissed a claim that the plaintiff was misled into believing that two similarly-named staining products were both suitable for a particular purpose where defendant had published a chart which "clearly indicated" the purposes for which each product could, and could not be used.   *Id.* at *2.   Unlike in *Fox,* there is not a single word on the ingredients list that discloses that some of these ingredients are unnatural.

8

*Williams,* 552 F.3d at 939-40;[7] *see also  Lam v. General Mills, Inc.,* 859 F. Supp. 2d 1097, 1104 (N.D. Cal. 2012) (pursuant to *Williams,* "the Fruit Snacks' ingredients list cannot be used to correct the message that reasonable consumers may take from the rest of the packaging"); *Dreyer's Grand Ice Cream,* 2012 WL 2990766, at *11 ("under *Williams,* [defendant] cannot rely on the ingredient list to correct any false or misleading statements on the front of its packaging"); *Von Koenig,* 713 F. Supp. 2d at 1079 (sustaining claim that "All Natural" label was misleading due to presence of high fructose corn syrup notwithstanding disclosure on ingredient list pursuant to *Williams*).[8]

## B.  Plaintiffs' Claims are Not Preempted By FDA Regulations or Barred By the Doctrine of Primary Jurisdiction

Defendant's argument that Plaintiffs' claims are preempted by FDA regulations (Def. Mem. at 7-8) or barred by the doctrine of primary jurisdiction (Def. Mem. at 8-10) are without merit.  Indeed, Defendant's argument would lead to the absurd result that companies would be completely immune from liability for falsely representing the ingredients in their cosmetics products.

---

[7]  Defendant's argument that *Williams* is inapplicable to this litigation (Def. Mem. at 14) is both wrong and entirely circular.  Defendant concedes that "*Williams* applies where a defendant makes a misrepresentation on a label and seeks to correct that misrepresentation by relying on contradictory information in the ingredient list." *Id.*  However, Defendant then fails to explain how, or why, there is no "contradiction" between Defendant's "naturally sourced" misrepresentations and the ingredients actually in the Products, given Plaintiffs' express allegations (¶¶3, 16-22).  Rather, Defendant's argument ignores Plaintiffs' entire claim and simply assumes its conclusion. *See id.* at 14-15.

[8]  Moreover, nothing on the ingredient list alerts consumers that, beyond the fact that there are synthetic (unnatural) ingredients, many of the unnatural ingredients also pose significant health risks, as discussed above.

9

### 1.    Plaintiffs' State Law Consumer Protection Claims Are Not Subject to Preemption

Defendant's argument that Plaintiffs' claims are preempted because the FDA has occupied the field of cosmetics labeling (*see* Def. Mem. at 7-8) is without merit.  As the Supreme Court of the United States has observed, "[b]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action."  *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 449 (2005).[9]  Here, Plaintiffs are seeking to enforce state consumer protection prohibitions against making *basic factual misrepresentations* on the Product labels (*i.e.,* that they are comprised of "100% naturally sourced sunscreen ingredients").  Contrary to Defendant's argument (Def. Mem. at 8), Plaintiffs' claims do not impinge upon or otherwise undermine FDA authority.  Rather, "consumer fraud claims based on statements that are alleged to be literally false, as a factual matter, have generally been found to be permissible under the FDCA" and thus not preempted by federal law or FDA regulation.  *Ohso Clean*, 2013 WL 1632697, at *14; *see also In re Epogen & Aranesp Offlabel Marketing & Sales Practices Litig.,* 590 F. Supp. 2d 1282, 1291-92 (C.D. Cal. 2008) (although direct claims that defendant promoted drug for off-label use in violation of federal law was preempted by FDCA and FDA regulation, separate state law consumer protection claims that, in furtherance of that scheme, defendant

---

[9] Defendant's reliance on *Bates* (Def. Mem. at 7) is perplexing.  In *Bates*, the Court stated the unremarkable proposition that a federal law (such as the Federal Insecticide, Fungicide and Rodenticide Act at issue there) *can* preempt state law (including common law), but then, in light of the principle articulated above, reversed the lower court for applying pre-emption too broadly and remanded for further proceedings.

10

made misrepresentations "that are literally false [or] misleading" would not be preempted).[10]

Indeed, numerous courts have rejected Defendant's preemption argument. "Permitting a factual determination to go forward with respect to whether the challenged 'natural' labels in this case would deceive a reasonable consumer is not akin to defining FDA policy, but rather is a finding of fact with respect to this particular plaintiff and product, and would not risk undermining the agency's expertise in this area." *Ivie v. Kraft Foods Global, Inc.*, No. C-12-02554-RMW, 2013 WL 685372, at *13 (N.D. Cal. Feb. 25, 2013) (rejecting preemption argument and declining to dismiss state law UCL and CLRA claims that "natural" label was misleading); *Astiana v. Ben & Jerry's Homemade, Inc.,* Nos. C 10-4387 PJH, C 10-4937 PJH, 2011 WL 2111796, at *10 (N.D. Cal. May 26, 2011) (state law claim that product was not "natural" does not implicate, and not preempted by, federal law or regulation); *Lockwood v. Conagra Foods, Inc.,* 597 F. Supp. 2d 1028, 1031 (N.D. Cal. 2009) (same); *see also In re Epogen*, 590 F. Supp. 2d at 1292 ("To hold to the contrary would mean that the FDA, not courts, would be responsible for resolving all questions of whether a statement made in connection

---

[10]  Defendant's reliance on the New Jersey district court's decision in *Crozier v. Johnson & Johnson Consumer Cos.,* 901 F. Supp. 2d 494 (D.N.J. 2012) is entirely misplaced.  In *Crozier,* the plaintiff alleged that the defendant's use of certain *trademarks* and *trade dress* on a product's label was misleading, and the court held that use of trademarks and dress fell within the scope of FDA labeling regulations and so were preempted.  *Id.* at 503-05.  However, the *Crozier* plaintiffs did not allege (as Plaintiffs do here) that the label at issue included false misrepresentations of fact, and the court did not address (much less hold) that such claims are preempted.

11

with [a regulated activity] was false, misleading or omitted a material fact.  This Court would not extend the FDA's [] jurisdiction so far.").[11]

## 2.    Plaintiffs' State Law Consumer Protection Claims Are Not Barred By the Doctrine of Primary Jurisdiction

Defendant's argument that Plaintiffs' claims are barred by the primary jurisdiction doctrine (Def. Mem. at 8-10) is also without merit.  As an abrogation of the court's power to resolve disputes, the primary jurisdiction doctrine is narrowly applied.  It is "a prudential, rather than a jurisdictional, limitation, as the court has discretion to retain jurisdiction."  *Janney v. Mills,* No. C 12-3919 PJH, 2013 WL 1962360, at *3 (N.D. Cal. May 10, 2013).  Moreover, "[w]here, as here, the doctrine is invoked at the motion to dismiss stage the question is whether the complaint plausibly implicates a claim that would *not* implicate the doctrine." *Chavez v. Nestle USA, Inc.,* 511 Fed. Appx. 606, 607 (9th Cir. 2013) (citation omitted; emphasis in original).

Here, Plaintiffs' claims are clearly outside the limited scope the primary jurisdiction doctrine.  First, Plaintiffs' claims do *not* implicate matters within the FDA's purview or that require its expertise.  Rather, as discussed above, Plaintiffs allege state consumer protection misrepresentation claims based upon a factual misrepresentation on the Products' labels.  This basic factual inquiry into the truthfulness of Defendant's "natural" representations does not require specialized analysis and is well within the purview of this Court.  "Such claims do not turn on

---

[11]  Even if Plaintiffs' state consumer protection claims in some way impinged upon the FDA's jurisdiction here – and, as discussed above, they do not – Plaintiffs' state claims are fully consistent with the FDCA, under which a cosmetic is deemed misbranded "if its labeling is false or misleading in any particular" and a drug shall be deemed misbranded "if its labeling is false or misleading in any particular."  21 U.S.C. §§ 362, 352.

12

determinations that require the expertise of the FDA as to what renders a statement misleading as incorrect factual statements are, by definition, false and misleading." *Ohso Clean*, 2013 WL 1632697, at *18; *Lockwood v. Conagra Foods, Inc.,* 597 F. Supp. 2d at 1035 (whether "all natural" label is misleading "is not a technical area in which the FDA has greater technical expertise than the courts – every day courts decide whether conduct is misleading").[12]

Second, contrary to Defendant's arguments, the FDA *has* had the "opportunity to address" the use of the "Natural" label in the context of cosmetics, but expressly declined to do so. *See* ¶1 at n.1. As Defendant acknowledges, the FDA on March 7, 2013, confirmed that it has never interpreted "natural" with regard to cosmetic products and that doing so does not "fit within [its] current health and safety priorities." *See* FDA Letter (attached to the Weinberger Declaration submitted with Defendant's Motion [Dkt. No. 38-1] as Exhibit F) at 3.[13] Although the FDA Letter stated that the ingredient list "*might aid*" (emphasis added) a consumer "concerned about the source of a cosmetic product's

---

[12]  Notably, the Ninth Circuit in *POM Wonderful LLC v. Coca-Cola Co.,* 679 F.3d 1170 (9th Cir. 2012) (Def. Mem. at 9) specifically did *not* hold that state law consumer claims must be dismissed in deference to the FDA. Rather, the *POM* court held that deference to the FDA warranted dismissal of plaintiff's *federal* Lanham Act claims. *Id.* at 1177-78. The Ninth Circuit then remanded the state consumer law claims (which the district court had dismissed on other grounds not relevant here), and said that the district court, *inter alia,* would have to *consider* whether FDA preemption applied. As discussed above, courts have routinely held that it does not.

[13]  Defendant's reliance on the underlying decision in *Astiana v. Hain Celestial Grp., Inc.,* 905 F. Supp. 2d 1013 (N.D. Cal. 2012) (Def. Mem. at 9-10) is misplaced. The FDA issued its *Astiana* letter declining to define "Natural" *after* the *Astiana* court had reached its determination that court action could undercut the FDA's authority. Accordingly, the *Astiana* court did not have the benefit of the FDA's express decision not to enter the field of defining "Natural" for cosmetics.

13

ingredients, it did *not* state that the ingredient list was sufficient to overcome a misrepresentation on a product label.[14]   Indeed, it is nonsensical to argue that, even though the FDA has specifically chosen *not* to offer any direction about use of the word "natural" with regard to cosmetic products, it nonetheless meant to occupy the field, and, by its inaction, allow Defendant to use that word in a manner that would mislead a reasonable consumer.[15]   *See Chavez,* 511 Fed. Appx. at 607 (reversing trial court dismissal on primary jurisdiction grounds of state consumer law claims concerning food additive where "the FDA has shown virtually no interest" in regulating chemical at issue); *Parker,* 2013 WL 4516156, at *7 (declining to apply primary jurisdiction doctrine because "various parties have repeatedly asked the FDA to rule on 'natural' labeling, and the FDA has declined," and so "referring the matter to the FDA would do little more than protract matters"); *Ohso Clean,* 2013 WL 1632697, at *18; *Janney,* 2013 WL 1962360, at *7 ("the court finds little reason to stay or dismiss the case to allow the FDA to take action" because "in repeatedly declining to promulgate regulations governing the use of "natural" as it applies [even] to food products, the FDA has signaled a relative lack of interest [and so] any referral to the FDA would likely prove futile"); *Lockwood,* 597 F. Supp. 2d at 1035 (declining to apply primary jurisdiction doctrine because "various parties have repeatedly asked the FDA to adopt formal rulemaking to define the word natural and the FDA has declined to do so because it is not a priority and the FDA has limited resources").

---

[14]   Moreover, any such position would be foreclosed in the Ninth Circuit based on the Court of Appeals' holding in *Williams,* discussed in Part III.A.2 above.

[15]   As Defendant acknowledges (Def. Mem. at 6), the FDA has defined "natural" in the context of food products "as meaning that nothing artificial or synthetic . . . has been included in, or has been added to, a food that would not normally be expected." *See* 58 Fed. Reg. 2302-01, 2407 (Jan. 6, 1993).

14

1   Accordingly, Plaintiffs' claims are not barred under the doctrine of primary
2   jurisdiction.

### C.   Plaintiffs Sufficiently Plead Claims Under the UCL, MCPA and Chapter 93A

5   Defendant erroneously argues that Plaintiffs have failed to satisfy various
6   other elements of their claims under California's Unfair Competition Law ("UCL")
7   (Count I) and the Michigan Consumer Protection Act ("MCPA") (Count V).[16]
8   Defendant's argument are wholly without merit.

### 1.   Plaintiffs Properly Allege a Claim Under the UCL

10  Plaintiffs allege in Count I that Defendant violated *three* separate prongs of
11  the UCL.  ¶¶34-51; *see* Cal. Bus. & Prof. Code §17200.  The first prong prohibits
12  any "fraudulent business act or practice."  Plaintiff alleges that Defendant violated
13  this prong by making misrepresentations likely to deceive members of the public.
14  ¶¶36-38.   Defendant does not argue that Plaintiffs have failed to allege the
15  elements of this prong, other than its erroneous argument that the Product labels
16  are not misleading as a matter of law.   Accordingly, Plaintiffs' claim under this
17  prong of the UCL should be sustained.

18  Plaintiffs have also properly alleged a UCL violation under the second prong
19  of the UCL, which provides that violation of *any* law can be an "unlawful"
20  business practice and thus form the basis of a UCL claim.  Plaintiff alleges that
21  Defendant, *inter alia,* violated Cal. Health & Safety Code § 111765 (the "Sherman

---

23  [16]   Notably, Defendant does *not* raise any additional arguments concerning
24  Plaintiffs' claims under the California Consumers Legal Remedies Act ("CLRA")
    (Count II), Plaintiffs' claims pursuant to state consumer protections statutes
25  materially similar to the CLRA (Counts III and IV), or Plaintiffs' claims pursuant
26  to Mass. Gen. Laws Ann. Ch. 93A (Count VI).  Those claims should be sustained
27  for the reasons discussed above.

15

Law"), which prohibits the sale of any misbranded cosmetic product. ¶¶41-42.   In response, Defendant simply repeats its prior, meritless argument that "the labels are not misleading to a reasonable consumer," and concludes that the Products therefore are not "misbranded" for purposes of the Sherman Law (or the UCL). Def. Mem. at 19.   However, as discussed above (in Part III.A), Plaintiff has adequately pled that Defendant's misrepresentations *are* misleading, and, in any event, the question of whether Defendant's "100% naturally sourced" representations are misleading to a reasonable consumer is a question of fact not amenable to resolution on a motion to dismiss.   Accordingly, Defendant's argument fails for all of the reasons set forth above.[17]

Finally, Plaintiffs allege that Defendant's misrepresentations that the Products were made solely from "naturally sourced" sunscreen ingredients when, in fact, they include numerous synthetic, unnatural ingredients, violated the third prong of the UCL because selling products by means of false representations constitutes "unfair" conduct.   ¶¶43-48.   As Defendant notes, there is a split of authority in the California courts, "which have applied three tests for unfairness in consumer cases." *Lesley v. Ocwen Fin. Corp.,* No. SA CV 12-1737-DOC(JPRx), 2013 WL 990668, at *6 (C.D. Cal. March 13, 2013) (citation omitted).   Plaintiffs' allegations satisfy all three tests.

Plaintiffs have satisfied the first type of test used, which states that "the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Id.* (citations omitted).   Here, Plaintiff alleges that Defendant's misrepresentations "violate[] the legislatively declared policies of the

---

[17]   Because Plaintiffs have properly pled a Sherman Law violation as a predicate act, Defendant's argument that Plaintiff's Federal Trade Commission Act allegations do not support UCL liability (Def. Mem. 17-19) is moot.

16

FTC Act ("FTCA") against committing unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce." ¶45. Defendant does not dispute the existence of such an FTCA policy, or that violation of that policy would be sufficient to state a claim under this line of cases. *See* Def. Mem. at 20. Rather, Defendant simply repeats its argument that the labels in this case are "not unfair or misleading." *Id.* However, as discussed above (*see* Part III.A), this substantive argument is without merit.[18]

Plaintiffs have also satisfied the requirements of the second "unfairness prong" line of cases that "require[] the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Lesley,* 2013 WL 990668, at *6 (citation omitted). Plaintiffs specifically allege that Defendant's misrepresentations harm consumers, and that those misrepresentations provide no benefit to consumers or competition generally. ¶¶46-47. In response, Defendant again erroneously argues that its labels were not misleading and that Plaintiffs and the putative class could not have been harmed by any misrepresentation due to the presence of an ingredient list. Def. Mem. at 21. Again, as discussed above (*see* Part III.A), this argument is without merit.[19] Incredibly, Defendant also argues that

---

[18] Defendant's reliance on *Herskowitz v. Apple, Inc.,* Nos. 12-CV-0213-LHK, 12-CV-03124-LHK, 2013 WL 1615897 (N.D. Cal. Apr. 15, 2013) is misplaced. In *Herskowitz,* the plaintiff alleged that defendant's contract for the sale of online music downloads was so one-sided as to be "unconscionable." After rejecting plaintiff's substantive "unconscionability" argument (which has no bearing on the substance of Plaintiffs' claims here), the court naturally also dismissed plaintiff's derivative UCL "unfairness prong" claim. *Id.* at *12. By contrast, Plaintiffs here, as discussed above, *have* sufficiently pled an underlying violation to their UCL "unfairness" claim.

[19] Defendant wrongly relies upon *Davis v. HSBC Bank Nev., N.A.,* 691 F.3d 1152 (9th Cir. 2012), for the proposition that any injury suffered by Plaintiffs here was "the product of [their] own behavior" for failing to read and understand the ingredients list. Def. Mem. at 21. In *Davis,* the court held that a credit card

17

Plaintiffs have not adequately alleged that the injury caused by Defendant's misrepresentations outweighs the benefits of those misrepresentations. Def. Mem. at 21-22. Here, Plaintiffs allege that they were misled into purchasing (at a premium price) sunscreens that were represented as being made from 100% "naturally sourced" ingredients, when in fact the Products contain *un*natural, harmful ingredients. ¶¶3-4, 8-12, 17-24. There is no possible consumer, competitive or societal benefit from misleading and deceptive labeling, especially where, as here, the Products include harmful chemicals.[20] Defendant makes the illogical (and, indeed, silly) argument that the website promotes the Products as "known to be gentle on sensitive skin," and somehow makes the leap that without its "naturally sourced" misrepresentations, "consumers' ability to make meaningful comparisons" among various gentle or less gentle sunscreens "would be impaired." Def. Mem. at 21-22. But Defendant could make the exact same comparison

---

advertisement was not misleading because the ad specifically stated that "other restrictions may apply," and, "[i]f that were not enough , the online application used boldface and oversized font to alert [plaintiff] to the Important Terms and Disclosure Statement" which listed the allegedly concealed fees. *Id.* at 1169. Defendant here provided no disclosures to Plaintiffs that the ingredients on the ingredient list here were *un*natural. Rather, the situation here is directly controlled by *Williams,* discussed above.

[20] Defendant's reliance on *Rice v. Sunbeam Prods., Inc.,* No. CV 12-7923-CAS (AKWx), 2013 WL 146270 (C.D. Cal. Jan. 7, 2013) is without merit. In *Rice,* the plaintiff alleged that that the defendant sold a crock pot with a design defect that allowed the pot to become unreasonably hot, despite misrepresenting that the pot was safe for in-home use. *See id.* at *7-8. The court dismissed plaintiff's claim on the ground that plaintiff had failed to sufficiently allege the existence of known defect. Given the absence of either a misrepresentation or a defect, the court concluded that plaintiff failed to allege that sale of the crockpot caused more consumer harm than benefit. *Id.* Here, by contrast, Plaintiffs have alleged that consumers were harmed by a misrepresentation that resulted in consumers paying a price premium. ¶¶4, 24.

18

between the Products and other, less-gentle sunscreens by using another differentiating word or phrase (like "gentle" itself).  Instead, Defendant used the false and misleading word "natural," which allowed it to charge a price premium even though the Products include unnatural – and harmful – ingredients.[21]

Finally, contrary to Defendant's erroneous argument (Def. Mem. at 21), Plaintiffs have also satisfied the multi-part third "unfairness prong" line of cases, which "draws on the definition of unfair in section 5 of the Federal Trade Commission Act and requires that (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided."  *Lesley,* 2013 WL 990668, at *6 (citations omitted).  Defendant only refers to its earlier arguments to support its claim that Plaintiffs have not satisfied this line of cases; for the same reasons discussed above, Defendant's argument is without merit.

### 2.   Plaintiffs Properly Allege a Claim Under the MCPA

Defendant's argument that Plaintiff's Michigan subclass (Count VI) must be dismissed because the MCPA exempts transactions "authorized" by the FDA (Def. Mem. at 22-23) is without merit.  Although the MCPA does not cover acts that are "specifically authorized" by law (Mich. Comp. Laws § 445.904(1)(a)), the

---

[21]  Defendant's argument that this litigation is comparable to *Herron v. Best Buy Co.,* 924 F. Supp. 2d 1161 (E.D. Cal. 2013) is baseless.  In *Herron,* the plaintiff alleged that the defendant's representations concerning the battery-life rating of certain products was misleading because the defendant failed to disclose that its battery-life rating was based on industry-standard benchmarks (rather than average real-world usage).  The court concluded that using industry-standard benchmarks was appropriate so that consumers could realistically compare battery-life ratings between products.  *Id.* at 1178.  Here, Defendant cites no industry standard to misleadingly label sunscreens as "naturally sourced."

19

Michigan Supreme Court has interpreted "specifically authorized" to mean conduct that the government has "explicitly sanctioned" or "licensed." *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514, 519-20 (2007).[22]  "The burden of proving an exemption . . . is upon the person claiming the exemption."  Mich. Comp. Laws § 445.904(4).

Here, Defendant has completely failed to show that its conduct was somehow "specifically authorized" or "explicitly sanctioned" by law.  Indeed, as discussed above (at note 11), the Food, Drug & Cosmetics Act of 1938 ("FDCA") does not sanction Defendant's conduct, stating that a drug or cosmetic product is misbranded "if its labeling is false or misleading," 21 U.S.C. §§ 352, 362.  As discussed above (in Part III.B), the FDA has *not*, in any way, authorized Defendant's use of the "naturally sourced" misrepresentations.  Accordingly, Neutrogena has not (and cannot) satisfied its "burden of proving" that an exemption applies.[23]

---

[22] *See Smith v. Globe Life Insurance Co.,* 597 N.W.2d 28, 36-37 (Mich. 1999) (exemption inapplicable where conduct "was not 'specifically authorized' under the defendant's real estate broker's license").

[23] Defendant's reliance on the court's summary judgment ruling in *Flanagan v. Altria Group, Inc.*, No. 05-71697, 2005 WL 2769010 (E.D. Mich. Oct. 25, 2005), is misplaced.  *Flanagan* addressed mislabeled cigarettes pursuant to Federal Trade Commission ("FTC") rules and the Federal Cigarette Labeling and Advertising Act ("FCLAA").  The conduct in *Flanagan* fell under explicit and broad rules that "establish a comprehensive Federal Program to deal with cigarette labeling and advertising."  15 U.S.C. § 1331.  No such "comprehensive" labeling statute exists here.  Additionally, at least one Circuit court has expressly rejected *Flanagan*'s reasoning and held that neither the FTC nor the FCLAA "authorized" defendant's cigarette mislabeling.  *Good v. Altria Group, Inc.*, 501 F.3d 29, 55-58 (1st Cir. 2007) (citing *Flanagan* and stating, "We disagree, then, with those courts holding that the FTC has 'authorized' Philip Morris's 'light' and 'lower tar and nicotine' claims so as to put them beyond the reach of state consumer protection statutes with exceptions similar to Maine's").

20

## IV.   CONCLUSION

Defendant misrepresented that the Products were "naturally sourced" to convey a specific message to consumers nationwide: that the Products were free of unnatural ingredients.   Defendant then charged a premium based on that misrepresentation.   Accordingly, Plaintiffs respectfully request that the Court deny Defendant's Motion in its entirety.   In the event the Court grants the Motion, Plaintiffs respectfully request leave to amend to address any deficiencies identified by the Court.

Dated:  November 22, 2013          Respectfully submitted,

By: /s/ Elizabeth P. Lin
Elizabeth P. Lin (State Bar No. 174663)
**THE LIN LAW FIRM, APLC**
2705 S. Diamond Bar Blvd., Suite 398
Diamond Bar, CA 91765
Telephone: (909) 595-5522
Facsimile: (909) 595-5519
elizabethl@thelinlawfirm.com

Mark P. Kindall (State Bar No. 138703)
Robert A. Izard (admitted *pro hac vice*)
Jeffrey S. Nobel (admitted *pro hac vice*)
Nicole A. Veno (admitted *pro hac vice*)
**IZARD NOBEL LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
mkindall@izardnobel.com
rizard@izardnobel.com
jnobel@izardnobel.com
nveno@izardnobel.com

Attorneys for Plaintiffs

21

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 22nd day of November, 2013, the foregoing document was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.


/s/ Nicole A. Veno
NICOLE A. VENO
ATTORNEY FOR PLAINTFFS

1