Elizabeth P. Lin (State Bar No. 174663)
**THE LIN LAW FIRM, APLC**
2705 S. Diamond Bar Blvd., Suite 398
Diamond Bar, CA 91765
Telephone: (909) 595-5522
Facsimile: (909) 595-5519
elizabethl@thelinlawfirm.com

Mark P. Kindall (State Bar No. 138703)
Robert A. Izard (admitted *pro hac vice*)
Jeffrey S. Nobel (admitted *pro hac vice*)
Nicole A. Veno (admitted *pro hac vice*)
**IZARD NOBEL LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
mkindall@izardnobel.com
rizard@izardnobel.com
jnobel@izardnobel.com
nveno@izardnobel.com

Ronen Sarraf (admitted *pro hac vice*)
Joseph Gentile (admitted *pro hac vice*)
**SARRAF GENTILE LLP**
1055 Franklin Avenue, Suite 204
Garden City, New York 11530
Tel: (516) 699-8890
Fax: (516) 699-8968
ronen@sarrafgentile.com
joseph@sarrafgentile.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE FAGAN, MELISSA PENNLLATORE, AMY SAPEIKA and SHELLEY TRINCHERO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEUTROGENA CORPORATION,<br><br>Defendant. | Case No.: 5:13-cv-01316-SVW-OP<br><br>CLASS ACTION<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**[REDACTED VERSION]**<br><br>Date: April 7, 2014<br>Time: 1:30 P.M.<br>Judge: Hon. Stephen V. Wilson<br>Place: Courtroom 6 – 2nd Floor<br>312 N. Spring Street |

# TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................................... 1

II.    PLAINTIFF CAN ESTABLISH RELIANCE, CAUSATION
       AND INJURY ON A CLASS-WIDE BASIS .................................................. 2

III.   PLAINTIFF CAN ESTABLISH DAMAGES ON A CLASS-
       WIDE BASIS ................................................................................................ 8

IV.    THE PROPOSED CLASSES ARE ASCERTAINABLE ............................ 13

V.     THERE ARE NO MATERIAL STATE LAW VARIATIONS
       THAT WOULD PRECLUDE CERTIFICATION OF A
       CLASS ......................................................................................................... 15

       A.     It is Proper to Apply California Law to a Nationwide
              Class in this Case ............................................................................. 15

       B.     In the Event the Court Declines to Certify a Nationwide
              Class, It Should Certify a Multistate Class ..................................... 16

              1.     Reliance and Causation ........................................................... 18

              2.     Injury ....................................................................................... 21

              3.     Intent ....................................................................................... 22

              4.     Statutory Exemptions ............................................................. 23

              5.     Other Issues ............................................................................ 24

VI.    CONCLUSION ........................................................................................... 25

i

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co.,*
   No. CV-09-0395 (JG), 2010 WL 2925955 (E.D.N.Y. July 21, 2010)...............20

*In re Actimmune Mktg. Litig.,*
   No. C 08-02376 MHP, 2010 WL 3463491 (N.D. Cal. Sept. 1, 2010)...............20

*Apple, Inc. v. Samsung Elec. Co., Ltd.,*
   No. 12-cv-00630-LHK, 2014 WL 794328 (N.D. Cal. Feb. 25, 2014)................9

*Artie's Auto Body, Inc. v. The Hartford Fire Insurance Co.,*
   287 Conn. 208, 947 A.2d 320 (2008)...............................................................18

*Aspinall v. Philip Morris Companies, Inc.,*
   453 Mass. 431, 902 N.E.2d 421 (2009)............................................................23

*Aspinall v. Philip Morris Companies, Inc.,*
   442 Mass. 381, 813 N.E.2d 476 (2004)............................................................19

*Astiana v. Ben & Jerry's Homemade, Inc.,*
   No. C 10-4387 PJH, 2014 WL 60097 (N.D. Cal. 2014) ...................................12

*Astiana v. Kashi Co,*
   291 F.R.D. 493 (S.D. Cal. 2013).............................................................7, 10, 14

*Bellerman v. Fitchburg Gas & Elec. Light Co.,*
   No. WOCV200900023B, 2013 WL 518526 (Mass. Super. Jan. 7,
   2013)...................................................................................................................19

*Berger v. Home Depot USA, Inc.,*
   741 F.3d 1061 (9th Cir. 2014)............................................................................4

*Bruno v. Eckhart Corp.,*
   280 F.R.D. 540 (C.D. Cal. 2012) .....................................................................16

*Bruno v. Quten Research Corp.,*
   280 F.R.D. 524 (C.D. Cal. 2011) ......................................................................7

*Butler v. Sears, Roebuck & Co.,*
   727 F.3d 796 (7th 2013) ............................................................................2, 13

ii

*Cabbat v. Philip Morris USA, Inc.,*
    No. 10-00162 DKW/BMK, 2014 WL 32172 (D. Haw. Jan 6, 2014)....11, 19, 20

*Campbell v. Purdue Pharma. L.P.,*
    No. 02cv00163 TCM, 2004 WL 5840206 (E.D. Mo. June 25, 2004) ..............20

*Carrera v. Bayer Corp.,*
    727 F.3d 300 (3d Cir. 2013) ...................................................13, 14, 15

*Casavant v. Norwegian Cruise Line, Ltd.,*
    76 Mass. App. Ct. 73, 919 N.E.2d 165 (2009).................................19

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
    MDL No. 1917, 2013 WL 5428139 (N. D. Cal. June 20, 2013) ......................9

*Cesale v. Kelly,*
    257 F.R.D. 396 (S.D.N.Y. 2009)...................................................18

*Chattanooga Foundry & Pipe Works v. City of Atlanta,*
    203 U.S. 390 (1906) ...................................................21

*Chavers v. Fleet Bank (RI), N.A.,*
    844 A.2d 666 (R.I. 2004).................................................23

*Chavez v. Blue Sky Natural Beverage Co.,*
    340 F. App'x 359 (9th Cir. 2009) .......................................2

*Chavez v. Blue Sky Natural Beverage Co.,*
    268 F.R.D. 365 (N.D. Cal. 2010) ..........................8, 11, 14

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC,*
    332 Fed. App'x. 565 (11th Cir. 2009) ....................................19

*Collins v. Anthem Health Plans, Inc.,*
    880 A.2d 106 (Conn. 2005)...............................................18

*Comcast Corp. v. Behrend,*
    __ U.S. __, 133 S.Ct. 1426 (2013) .............................................9, 10

*Curtis Lumber Co., Inc. v. Louisiana Pac. Corp.,*
    618 F.3d 762 (8th Cir. 2010) ...........................................17

*Davis v. Powertel, Inc.,*
    776 So.2d 971 (Fla. 1st DCA 2006)...................................................19

iii

*Delarosa v. Boiron, Inc.*,
   275 F.R.D. 582 (C.D. Cal. 2011) ...................................................................... 14

*Dix v. Am. Bankers Life Assur. Co. of Florida*,
   429 Mich. 410, 415 N.W.2d 206 (1987) ........................................................... 22

*Ebin v. Kangadis Food Inc.*,
   No. 13 CIV. 2311 JSR, 2014 WL 737960 (S.D.N.Y. Feb. 25, 2014) ............... 20

*Feltner v. Columbia Pictures Television, Inc.*,
   523 U.S. 340 (1998) .......................................................................................... 25

*In re Ferrero Litig.*,
   278 F.R.D. 552 (S.D. Cal. 2011) ......................................................................... 7

*Fitzpatrick v. General Mills, Inc.*,
   263 F.R.D. 687 (S.D. Fla. 2010) ....................................................................... 19

*Gartin v. S & M NuTec LLC*,
   245 F.R.D. 429 (C.D. Cal. 2007) ......................................................................... 4

*In re Glaceau Vitaminwater Mktg. & Sales Practice Litig.*,
   No. 11-MD-2215 DLI RML, 2013 WL 3490349 (E.D.N.Y. July 10,
   2013) .................................................................................................................. 19

*Granite State Ins. Co. v. Smart Modular Technologies, Inc.*,
   76 F.3d 1023 (9th Cir. 1996) ............................................................................. 24

*Green v. McNeil Nutritionals, LLC*,
   2005 WL 3388158 (Fla. Cir. Ct. Nov. 16, 2005) ............................................. 19

*Grodzitsky v. American Honda Motor Co., Inc.*,
   No. 12-cv-01142-SVW-PLAx, 2014 WL 718431 (C.D. Cal. Feb. 19,
   2014) .................................................................................................................. 15

*Guido v. L'Oreal, USA*,
   284 F.R.D. 468 (C.D. Cal. 2012) ................................................................. 7, 11

*Helde v. Knight Transp., Inc.*,
   No. C12-0904RSL, 2013 WL 5588311 (W.D. Wash. Oct. 9, 2013) ................. 21

*Johns v. Bayer Corp.*,
   280 F.R.D. 551 (S.D. Cal. 2012) ......................................................................... 7

iv

*Johnson v. General Mills, Inc.,*
  275 F.R.D. 282 (C.D. Cal. 2011) ................................................................ 3, 4

*Kaldenbach v. Mutual Omaha Life Ins. Co.,*
  178 Cal App. 830 (2009) ................................................................................. 4

*Keegan v. Am. Honda Motor Co., Inc.,*
  284 F.R.D. 504 (C.D. Cal. 2012) ................................................................. 16

*Konik v. Time Warner Cable,*
  No. 07-763 SVW (RZx), 2010 WL 8471923 (C.D. Cal. Nov. 24,
  2010) .............................................................................................................. 15

*Kwaak v. Pfeizer,*
  71 Mass. App. Ct. 293 (2007) ....................................................................... 19

*Kwikset Corp. v. Superior Court,*
  51 Cal. 4th 310, 246 P.3d 877 (2011) ........................................................... 18

*Lawrence v. Philip Morris USA, Inc.,*
  164 N.H. 93, 53 A.3d 525 (2012) .................................................................. 20

*Leyva v. Medline Indust. Inc.,*
  716 F.3d 510 (9th Cir. 2013) ...................................................................... 9, 10

*Lindell v. Synthes USA,*
  No. 11-cv-02053-LJO-BAM, 2014 WL 841738 (E.D. Cal. March 4,
  2014) .............................................................................................................. 10

*Liss v. Lewiston-Richards, Inc.,*
  732 N.W.2d 514 (Mich. 2007) ...................................................................... 23

*Mahfood v. QVC, Inc.,*
  No. 06-0659-AG(ANx), 2008 WL 5381008 (C.D. Cal. Sept. 22, 2008).......... 13

*Makoff v. Trump University, LLC,*
  No. 3:10-cv-0940-GPC-WVG, 2014 WL 688164 (S.D. Cal. 2014)................... 3

*Mayer v. Gary Partners & Co., Ltd.,*
  29 F.3d 330 (7th Cir. 1994) .......................................................................... 24

*Mazza v American Honda Motor Co., Inc.,*
  666 F.3d 581 (9th Cir. 2012) ........................................................... 15, 16, 24

v

*McCrary v. Elations Co.., LLC,*
    No. 13-00242 JGB (OPx), 2014 U.S. Dist. LEXIS 8443 (N.D. Cal.
    Jan. 13, 2014)................................................................................10, 13, 14, 15

*Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen.,*
    *Dep't of Legal Affairs, State of Fla.,*
    761 So. 2d 1256 (Fla. Dist. Ct. App. 2000).......................................17

*Moreno v. AutoZone, Inc.,*
    251 F.R.D. 417 (N.D. Cal. 2008) .......................................................14

*M.S. Wholesale Plumbing, Inc. v. Univ. sports Pubn's. Co.,*
    2008 U.S. Dist. LEXIS 124000 (E.D. Ark. May 22, 2008) ...............18

*Nathan v. Boeing Co.,*
    116 F.3d 422 (9th Cir. 1997)..............................................................24

*O'Connor v. Boeing North American Inc.,*
    184 F.R.D. 311 (C.D. Cal. 1998) .........................................................9

*Panag v. Farmers Ins. Co. of Washington,*
    166 Wash. 2d 27, 204 P.3d 885 (2009)...............................................21

*Pecover v. Elec. Arts Inc.,*
    No. C 08-2820 VRW, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010)...............21

*People ex rel. Spitzer v. Applied Card Sys., Inc.,*
    27 A.D.3d 104, 805 N.Y.S.2d 175 (2005) .........................................17

*Phillips v. Ford Motor Co.,*
    No. 99-L-1041, 2003 WL 23353492 (Ill. Cir. Ct. Sept. 15, 2003) ...................19

*Plubell v. Merck & Co., Inc.,*
    289 S.W.3d 707 (Mo. Ct. App. 2009)................................................20

*In re Rail Freight Fuel Surcharge Antitrust Litig.,*
    725 F.3d 244 (D.C. Cir. 2013) ............................................................11

*Red v. Kraft Foods, Inc.,*
    No. CV 10-1028-GW(AGRx), 2012 WL 8019257 (C.D. Cal. Apr. 12,
    2012)......................................................................................................7

*Ries v. Arizona Beverages USA LLC,*
    287 F.R.D. 523 (N.D. Cal. 2012) ...................................................7, 14

vi

*Salatino v. Chase,*
  2005 WL 5872281 (Vt. Super. Court Feb. 28, 2005)........................................20

*Saucier v. Countrywide Home Loans,*
  64 A.3d 428 (D.C. 2013) ...................................................................................17

*State by Lefkowitz v. Colorado State Christian Coll. of
  Church of Inner Power, Inc.,*
  76 Misc. 2d 50, 346 N.Y.S.2d 482 (Sup. Ct. 1973) ..........................................17

*Stearns v. Ticketmaster Corp.,*
  655 F.3d 1013 (9th Cir. 2011) .............................................................................3

*In re Tableware Antitrust Litig.,*
  241 F.R.D. 644 (N.D. Cal. 2007) .......................................................................11

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
  267 F.R.D. 291 (N.D. Cal. 2010) .........................................................................9

*Thurston v. Bare Naked Corp.,*
  No. 3:11–CV–02890–H (BGS), 2013 WL 5664985 (S.D. Cal. Jul. 30,
  2013)..........................................................................................7, 10, 11, 14

*In re Tobacco II Cases,*
  46 Cal. 4th 298, 207 P.3d 20 (2009) ....................................................................7

*Tokidoki, LLC v. Fortune Dynamic, Inc.,*
  No. CV 07-1923 DSF (PJWx), 2009 WL 2366439 (C.D. Cal. July 28,
  2009)......................................................................................................6

*In re Toyota Motor Corp. Hybrid Brake Litig.,*
  No. MDL 10-02172-CJC(RNBx), 2012 WL 4904412 (Sept. 20, 2012) .......9, 10

*Turcios v. Carma Laboratories, Inc.*
  No. CV 12-8487-JGB(Ex), 2014 WL 323662 (C.D.Cal. Jan. 27, 2014)............8

*TV Interactive Data Corp. v. Sony Corp.,*
  929 F. Supp. 2d 1006 (N.D. Cal. 2013) ................................................................9

*Walker v. Wenatchee Valley Truck & Auto Outlet, Inc.,*
  155 Wash. App. 199, 229 P.3d 871 (2010) ........................................................24

*Warma Witter Kreisler, Inc. v. Samsung Electronics Am., Inc.,*
  No. CIVA 08-5380 (JLL), 2010 WL 1424014 (D.N.J. Apr. 8, 2010) ...............24

vii

*Washington Mutual Bank, FA v. Superior Court,*
  24 Cal.4th 906, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (2001)...............................15

*Weiner v. Snapple Beverage Corp.,*
  No. 07 Civ. 8742(DLC), 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010).............20

*Weiner v. The Dannon Company*,
  255 F.R.D. 658 (C.D. Cal. 2009) ...........................................................3, 8, 11

*Westfield Ins. Co. v. D & G Dollar Zone,*
  No. 306408, 2013 WL 951086 (Mich. Ct. App. Feb. 28, 2013).......................22

*Williams v. Gerber Products Co.,*
  552 F.3d 934 (9th Cir. 2008) .................................................................................6

*Wolph v. Acer America Corp.*,
  272 F.R.D. 477 (N.D. Cal. 2011) ......................................................................3, 8, 14

*Wyatt v. Philip Morris USA, Inc.,*
  No. 09-C-0597, 2013 WL 4046334 (E.D. Wis. Aug. 8, 2013) .........................21

*In re Yasmin & Yaz Mktg. Sales Litig.,*
  No. 09-md-02100-DRH-PMF, 2012 WL 865041 (S.D. Ill. March 13,
  2012) ...................................................................................................................12

*Yokohama v. Midland Nat. Life Ins. Co.,*
  594 F.3d 1087 (9th Cir. 2010)
  (reversing 243 F.R.D. 400 (D. Haw. 2007)) ......................................................19

*Zeisel v. Diamond Foods, Inc.,*
  No. C 10-01192 JSW, 2011 WL 2221113 (N.D. Cal June 7, 2011)...........10, 14

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1

**Statutes, Regulations & Rules**

2

3

21 U.S.C. §§ 352(a) & 562(a) ("FDCA") ................................................................ 23

4

5

Fed. R. Civ. P. 23(a) ................................................................................................ 1

6

Fed. R. Civ. P. 23(b) ........................................................................................*passim*

7

Fed. R. Civ. P. 23(d) .............................................................................................. 17

8

9

Alaska Stat. Ann. § 45.50.545 ............................................................................... 17

10

Cal. Civ. Code § 1782 ............................................................................................ 22

11

Conn. Gen. Stat. Ann. § 42-110 ...................................................................... 17, 23

12

Haw. Rev. Stat. § 480-2 ......................................................................................... 17

13

815 ILCS 505/2 ...................................................................................................... 17

14

Mass. Gen. Laws Ann. ch. 93A, §§ 2 & 3 ...................................................... 17, 23

15

16

Mich. Comp. Laws Ann. § 445.904 ....................................................................... 23

17

R.I. Gen. Laws Ann. § 6-13 ............................................................................. 17, 23

18

Vt. Stat. Ann. tit. 9, § 2453 ................................................................................... 17

19

Wash. Rev. Code Ann. §§ 19.86.170, 19.86.920 .......................................... 17, 24

20

21

22

23

24

25

26

27

28

**Miscellaneous**

Brief of *Amici Curiae* Professors of Civil Procedure
   and Complex Litigation in Support of Petition for
   Rehearing *En Banc* in *Carrera v. Bayer Corp.* .................................................. 13

FDA letter regarding *Astiana v. The Hain Celestial Group* ................................ 23

Newberg on Class Actions § 7:32 (5th ed.) ........................................................ 18

Note, *Toward Greater Equality in Business Transactions:*
   *A Proposal to Extend the Little FTC Acts to Small Businesses,*
   96 Harv. L. Rev. 1621, 1623 (1983). ............................................................. 16

x

Plaintiffs respectfully submit this reply in support of their Motion for Class Certification ("Pl. Mot.") and accompanying Memorandum of Points and Authorities ("Pl. Mem.") [Dkt. No. 52], and in response to Defendant's Opposition ( "Def. Mem.") [Dkt. No. 72].

## I.   Introduction

Defendant does not deny that its "natural" misrepresentations were false, because the Products indisputably contain artificial ingredients.   Moreover, Defendant cannot reasonably deny [   **REDACTED TEXT**

].   In addition, Defendant essentially concedes that Plaintiffs have met their burden under Rule 23(a), burying their challenge in a single footnote.[1]

Instead, Neutrogena devotes its brief to hyper-technical attacks on predominance, arguing that reliance, causation and injury cannot be established with common proof.   Defendant is wrong.   Because these "natural" misrepresentations are material, there is a class-wide presumption that consumers purchased the products – at a premium – as a result of the misrepresentation.   The price premium can be determined on a class-wide basis using standard techniques such as hedonic regression and conjoint analysis.

---

[1] Defendant's arguments in footnote 4 concerning typicality and commonality are without merit.   The commonality arguments fail for the reasons set forth below concerning predominance, and the typicality arguments fail, both because Plaintiffs' *claims* are typical – that   is, they all purchased the misrepresented products and thus paid the price premium – and because each of the Plaintiffs testified that they relied on Defendant's representation that the products were natural.   *See* Declaration of Mark Kindall submitted herewith ("Kindall Decl.") at Ex. C (Sapeika Dep. at 41:5-18, 54:12-25); Ex. D (Fagan Dep. at 44:2-20, 45:13-16, 46:8-49:23, 53:20-55:25); Ex. E (Trinchero Dep. at 29:21-30:24, 41:13-18); Ex. F (Pennellatore Dep. at 35:12-36:14).

1

If Defendant's arguments were correct, there could be no consumer class actions for misrepresentation claims and that is simply not the case.   As the Seventh Circuit observed:

> It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages. ***If the issues of liability are genuinely common issues,*** and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, ***the fact that damages are not identical across all class members should not preclude class certification. Otherwise defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits.*** As we noted in *Carnegie v. Household Int'l., Inc.,* 376 F.3d 656, 661 (7th Cir.2004), "the more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class 17 million suits each seeking damages of $15 to $30.... ***The realistic alternative to a class action is not 17 million individual suits, but zero individual suits,*** as only a lunatic or a fanatic sues for $30" (emphasis in original).

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) *cert. denied*, 13-430, 2014 WL 684064 (U.S. Feb. 24, 2014).

Defendant also claims that differences between state laws preclude certification of a multistate class, but points to no significant distinctions among the statutes at issue.   It is entirely feasible to litigate the case on behalf of consumers in 16 states and the District of Columbia that have materially similar consumer protection laws.

## II.     Plaintiff Can Establish Reliance, Causation and Injury on a Class-Wide Basis

Defendant wrongly claims that Plaintiffs cannot establish, on a class-wide basis, that plaintiffs were injured.   Consumers are injured when they purchase a product subject to a material misrepresentation.   *Chavez v. Blue Sky Natural Beverage Co.,* 340 F. App'x 359, 361 (9th Cir. 2009).   Because the

2

misrepresentation was material, the Court should presume class-wide reliance on the misrepresentation and that the misrepresentation caused a class-wide injury.[2]

Causation is established on a class-wide basis "by *materiality*. If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." *Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1022 (9th Cir. 2011) (internal quotations and citations omitted; emphasis in original).  Courts have routinely found class-wide reliance in cases involving similar misrepresentations, including about healthfulness on labels.[3]

Defendant's argument that class-wide causation cannot be established because different Class Members were subject to different misrepresentations is simply incorrect.  Every PDP, which every class member purchaser saw, displays the identical core phrase "naturally sourced."  Although some Products were labeled as "naturally sourced" and others as "100% naturally sourced" (Def. Mem. at 14-15), this is a distinction without a material difference.  As confirmed by the original and rebuttal declarations submitted by Plaintiffs' expert Dr. Elizabeth Howlett, most consumers understand *both* phrases to mean the same thing: that the sunscreens contain no artificial ingredients.  *See* Howlett Decl. (submitted in

---

[2] Plaintiffs allege that damages are quantifiable on a class-wide basis by showing that each and every Plaintiff paid a price premium for the misrepresented product.  Defendant characterizes this a question of injury (Def. Mem. at 10-14), but it makes little difference whether it is analyzed under injury or damages.  As discussed in Part III below, the price premium can also be established by class-wide proof.

[3] *See, e.g., Makoff v. Trump University, LLC*, No. 3:10-cv-0940-GPC-WVG, 2014 WL 688164, at *12-14 (S.D. Cal. 2014); *Johnson v. General Mills, Inc.,* 275 F.R.D. 282, 288-89 (C.D. Cal. 2011); *Wolph v. Acer America Corp.*, 272 F.R.D. 477, 488 (N.D. Cal. 2011); *Weiner v. The Dannon Company*, 255 F.R.D. 658, 669-70 (C.D. Cal. 2009).

3

conjunction with Plaintiffs' opening motion) at ¶¶13, 38-45; Howlett Rebuttal Decl. (submitted herewith as Exhibit B to the Kindall Declaration) at ¶5, 31.[4]

Defendant's further arguments that the Product labels changed in minor ways or that certain Class Members may have seen other, additional (mis)representations (Def. Mem. at 15) is likewise unavailing: the core "naturally sourced" misrepresentation remained constant on the PDPs throughout the Class Period. *See Johnson,* 275 F.R.D. at 288-289 (certifying class based on "overriding material misrepresentation" on packaging that yogurt product improved digestive health despite modifications in packaging over time).[5]

---

[4] Defendant's selective quotations from Plaintiff Sapeika's deposition do not demonstrate that these phrases are materially different to a reasonable consumer. For example, in response to a direct question concerning the difference between "naturally sourced and "100% naturally sourced," Sapeika testified "I don't know that I would have seen it any differently, but I think having 100% there was an extra added reassurance." Kindall Decl. at Ex. C (Sapeika Dep. at 71). The fact that Defendant's use of 100% in some instances provided "*extra*" and "*added* reassurance" does not change the plain core meaning of "naturally sourced," especially under an objective, class-wide standard. However, to the extent that the Court concludes that the addition of "100%" would make a material difference to a reasonable consumer, that issue could be resolved through separate subclasses.

[5] *See also* the cases cited in note 3 *supra,* in which classes were certified, notwithstanding variations in package designs and/or advertisements, because the disputed verbiage was common to the entire class. In this regard, Defendant's reliance on *Kaldenbach v. Mutual Omaha Life Ins. Co.,* 178 Cal App. 830, 850 (2009) (Def. Mem. at 14, 15) is misplaced because the alleged misrepresentations were *non-uniform* statements by independent agents. The same is true of *Berger v. Home Depot USA, Inc.,* 741 F.3d 1061,1069 (9th Cir. 2014), where class members were *not* all exposed to the alleged deceptive practices. In *Gartin v. S & M NuTec LLC,* 245 F.R.D. 429, 440 (C.D. Cal. 2007) (Wilson, J.), the Court held that the named plaintiff failed to establish causation where she admitted that she did not read the packaging and could not have relied on a material misrepresentation. Here, the named Plaintiffs *did* read the misrepresentations on the Products' PDPs. Furthermore, as discussed below, Plaintiffs can show that Defendant's misrepresentations allowed it to charge a premium for the products that was paid by *all* consumers – including those who did not look at the label.

4

1    Defendant's argument that Plaintiffs cannot prove that the "naturally

2  sourced" misrepresentation was material (Def. Mem. at 15-17) is wrong.  Plaintiffs

3  introduce two independent methods of proving materiality: [  **REDACTED TEXT**

4  ] and Howlett's expert consumer research.  Pl. Mem. at 12-13, 14-15; *see also* Def.

5  Mem. at 15.  First, [    **REDACTED TEXT**

6

7

8

9

10

11

12

13

14

15                                                                                        ].

16    Defendant's attacks on Howlett's report (Def. Mem. at 15-16) similarly fail.

17  Defendant relies solely upon the analysis of Joseph Ridgway to argue that

18  Howlett's methodology was flawed.  *Id.*  Critically, Ridgway never opines that the

19  "naturally sourced" misrepresentations are immaterial (or otherwise rebuts

20  Howlett's conclusions).  Instead, he merely asserts erroneous and unsubstantiated

21  challenges to Howlett's methodology.  Howlett's rebuttal report details, point-by-

22  point why each of Ridgway's criticisms are incorrect and should be ignored.  *See*

23  Howlett Rebuttal Decl. at ¶¶7-30.

24    Defendant wrongly asserts that Howlett's testing should have encompassed

25  the entire product packages, rather than testing consumer response to the specific

26  misrepresentations at issue.  Def. Mem. at 16.  As Howlett opines, Defendant is

27  wrong.  Howlett Rebuttal Decl. at ¶¶24-25 .  Indeed, where the misrepresentation is

28                                                    5

uniform, courts disregard packaging variations (*see supra* notes 3 and 5). Moreover, a Defendant cannot make misrepresentations on the front of a package and escape liability by disclosures on the back. *Williams v. Gerber Products Co.,* 552 F.3d 934, 939 (9th Cir. 2008).[6]

[ **REDACTED TEXT**

] Indeed, Defendant represents on its own PDPs that the entire Product – *everything* in the tube, not just the active sun-blocking ingredients – is "SUNSCREEN." *See* Kindall Decl., Ex. G. Howlett's research confirmed that most consumers understood the terms to be referring to the whole product. Howlett Decl. at 13. This is common sense: a consumer that wants a product free of synthetic

---

[6] The information on the back of the package does not cure the misimpression caused by Defendant's representation that the products are "naturally sourced." Even Dr. Hao Ouyang, the witness Defendant produced to testify about the product formulas, stated that he "couldn't be sure" whether many of the ingredients listed on the back of the product labels were natural extracts or synthetic chemicals. Veno Decl., Ex. C (Ouyang Dep. at 18). In any event, questions about the weight to be given to the competing expert reports are properly reserved for the ultimate finder of fact, and should not be determined on a motion for class certification. Indeed, in the sole case cited by Defendant, the court rejected an expert report only in its role as fact-finder *after a full evidentiary trial. Tokidoki, LLC v. Fortune Dynamic, Inc.,* No. CV 07-1923 DSF (PJWx), 2009 WL 2366439, at *1, 14 (C.D. Cal. July 28, 2009).

6

carcinogens wants the *entire* product to be natural, not just the active sun-blocking ingredients.[7]

[  **REDACTED TEXT**

[8]

].[9]  However, the issue is [

**REDACTED TEXT**

**]** simply whether the natural misrepresentation was material, from which reliance is presumed.[10]

---

[7] [  **REDACTED TEXT**

].

[8] Defendant does not and cannot dispute that each named Plaintiff relied on the natural misrepresentations.  *See supra* n. 1.

[9] [  **REDACTED TEXT**

].

[10] *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326-27, 207 P.3d 20, 39 (2009); *Astiana v. Kashi Co*, 291 F.R.D. 493, 501-03, 505 (S.D. Cal. 2013); *Thurston v. Bare Naked Corp.*, No. 3:11–CV–02890–H (BGS), 2013 WL 5664985, at *5 (S.D. Cal. Jul. 30, 2013); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557-59 (S.D. Cal. 2012); *Red v. Kraft Foods, Inc.*, No. CV 10–1028–GW(AGRx), 2012 WL 8019257, at *8 (C.D. Cal. Apr. 12, 2012); *Guido v. L'Oreal, USA*, 284 F.R.D 468, 476-78 (C.D. Cal. 2012); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 537-39 (N.D. Cal. 2012); *In re Ferrero Litig.*, 278 F.R.D. 552, 560 (S.D. Cal. 2011); *Bruno v. Quten Research Corp.*, 280 F.R.D. 524, 534-35 (C.D. Cal. 2011);

7

### III.    Plaintiff Can Establish Damages on a Class-Wide Basis

Damages are quantifiable:  consumers paid a price premium for the products on the basis of the "natural" representation.  Contrary to Defendant's argument, the price premium can be established through class-wide proof.

[    **REDACTED TEXT**

].

[    **REDACTED TEXT**

*Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 376-78 (N.D. Cal. 2010); *Weiner* 255 F.R.D. at 669-70; *Wolph.*, 272 F.R.D. at 488.

Defendant's reliance on *Turcios v. Carma Laboratories, Inc.* No. CV 12-8487-JGB(Ex), 2014 WL 323662, at *7 (C.D.Cal. Jan. 27, 2014) (Def. Mem. at 17), is misplaced.  *Turcios* correctly stated that reliance is presumed from materiality and that materiality is an objective standard.  For reasons that are unclear, the court disregarded that standard and erroneously applied a subjective standard and treated materiality and reliance as individualized questions.

8

1   **REDACTED TEXT**

2

3

4

5

6

7

8

9

10

11

12

13

14                                                                      ].[11]

15      A hedonic regression methodology satisfies *Comcast Corp. v. Behrend,* __

16  U.S. __, 133 S.Ct. 1426 (2013).  *Comcast* held only that a regression analysis was

17  insufficient to show class-wide damages in that case because it "did not isolate

18  damages resulting from any one theory of antitrust impact" and that "a model

19  purporting to serve as evidence of damages in [a] class action must measure only

20  those damages attributable to that theory."  *Leyva v. Medline Indust. Inc.*, 716 F.3d

21

22

23  ─────────────────────
    [11] [                    **REDACTED TEXT**

24

25

26

27                                              ].

28                                    9
    ─────────────────────────────────────────────────────────
    **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION – REDACTED**

510, 514 (9th Cir. 2013) (quoting *Comcast,* 133 S.Ct. at 1431, 1433).[12]  *Comcast* does not bar class actions where plaintiffs provide a workable damages model that directly correlates to their theory of liability.  *Lindell v. Synthes USA*, No. 11-cv-02053-LJO-BAM, 2014 WL 841738, at *14 (E.D. Cal. March 4, 2014)  ("so long as the damages can be determined and attributed to a plaintiff's theory of liability, damage calculations for individual members do not defeat certification"); *McCrary v. Elations Co.., LLC,* No. 13-00242 JGB (OPx), 2014 U.S. Dist. LEXIS 8443, at *50 (N.D. Cal. Jan. 13, 2014) (even though defendant entitled to damages offset, "the [c]ourt does not require [p]laintiff to identify a comparable 'clinically-proven' product which could serve to offset damages" at class certification stage).[13]

---

[12]  Because *Leyva* expressly discusses the limits *Comcast*, Defendant's argument that *Leyva* "has no applicability here" is simply incorrect.  Moreover, the Ninth Circuit held that the district court abused its discretion in holding that individual damages issues defeated class certification where damages, although individual, could be calculated based upon defendant's own records.  *Leyva*, 716 F.3d at 514. Here, [                        **REDACTED TEXT**



                                        ].

[13]  Moreover, "on individual damage calculations, the *Comcast* ruling breaks no new grounds, nor does it alter the existing class certification construct." *Lindell*, 2014 WL 841738, at *14.  Accordingly, all of the pre-*Comcast* cases certifying classes based on damages methodologies that, when run, would ultimately isolate the relevant damages, but that had not yet been performed at the time of class certification, remain good law.  *See, e.g., In re Toyota,* 2012 WL 4904412, at *1, 4 (declining to strike class certification expert who proposed conducting future hedonic analysis to measure damages); *Astiana v. Kashi Co.,* 291 F.R.D. at 506 (plaintiffs' damages theory "viable" where plaintiffs "represented that they can calculate the total restitutionary damages based upon sales, profits and prices data from records generally maintained by Kashi" and that "individual issues as to how much reward each class member is entitled later" can be addressed at a later time); *Thurston*, 2013 WL 5664985, at *10 (finding the same damages theory used in Astiana to be "viable" for the purposes of class certification); *Zeisel v. Diamond Foods, Inc.,* No. C 10-01192 JSW, 2011 WL 2221113, at *10 (N.D. Cal June 7,

10

---

Indeed, even Defendant implicitly acknowledges that so long as Plaintiffs have articulated a valid damages *methodology*, Plaintiffs need not have actually "run" their model yet (*see generally* Def. Mem. at 10-11).

Here, this litigation is still at the initial stages of discovery (indeed, the parties only recently concluded negotiations concerning the scope of document production).

[   **REDACTED TEXT**

.[14]   Accordingly, Plaintiffs have fully satisfied *Comcast*'s requirements.[15]

---

2011) (at class certification, plaintiff need only establish methodology through which damages can be calculated at future time).  Indeed, both before and after *Comcast,* numerous courts certified classes without requiring plaintiffs to present an expert report on damages methodology at all.  *See, e.g., Thurston,* 2013 WL 5664985, at *10; *Guido,* 284 F.R.D. at 479; *Weiner,* 255 F.R.D. at 670-71; *Chavez*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) ("At class certification, plaintiff must present 'a likely method for determining class damages,' though it is not necessary to show his method will work with certainty'") (quoting *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 652 (N.D. Cal. 2007)).  In reliance on these cases, Plaintiffs did not submit an expert on damages in their opening motion, but submit one now to rebut Defendant's Ugone report.

[14]   [   **REDACTED TEXT**

].

[15]   Defendant's reliance on *Cabbat v. Philip Morris USA, Inc.,* No. 10-00162 DKW/BMK, 2014 WL 32172, at *12 (D. Haw. Jan 6, 2014) (Def. Mem. at 11), is misplaced; in *Cabbat,* the plaintiffs provided *no* damages methodology, beyond the "bare bones" allegations that plaintiffs had been deprived of the "benefit of the bargain."  Likewise, *In re Rail Freight Fuel Surcharge Antitrust Litig.,* 725 F.3d 244, 253 (D.C. Cir. 2013) merely stated the unremarkable proposition that district courts should ensure that plaintiffs' damages models are not "divorced from the plaintiffs' theory of liability" and then remanded to the district court to conduct

11

---

[   **REDACTED TEXT**

]$^{16}$

Plaintiffs need not isolate a *single* competing product; they need to identify the price premium.$^{17}$

[   **REDACTED TEXT**

$^{18}$

---

such an analysis.   Nothing in *Rail Freight* questions or criticizes the damages methodology developed here by Plaintiffs and the expert.

$^{16}$ Plaintiffs' argument in its opening memorandum concerning the prices of competing products (*see, e.g.,* Pl. Mem. at 7, 13) was cited as *one* example of evidence that could demonstrate a price premium.  The measure of damages is the difference in value of the Products with and without the "natural" misrepresentations, a fact which Defendant concedes (Def. Mem. at 11, 14). Expert testimony establishes the Class' actual damages.  *See, e.g.,* Pl. Mem. at 13.

$^{17}$  Accordingly, Defendant's reliance on *In re Yasmin & Yaz Mktg. Sales Litig.,* No. 09-md-02100-DRH-PMF, 2012 WL 865041, at *24 (S.D. Ill. March 13, 2012) is without merit, as the *Yasmin* plaintiffs, unlike Plaintiffs here, expressly based their damages claim on their ability to find a single comparable product, but failed to identify such a product in their class certification papers.  Here, as discussed above, Plaintiffs' damages methodology is based upon a broad-based regression of attributes of products in the sunscreen market generally.

$^{18}$ [   **REDACTED TEXT**

12

].[19]

## IV.   The Proposed Classes Are Ascertainable

Defendant's argument that that the classes proposed by Plaintiffs are not ascertainable (Def. Mem. at 24-25) is incorrect.   Defendant relies almost exclusively upon the Third Circuit's ruling in *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013).   However, courts in *this* Circuit have rejected *Carrera* as imposing improper burdens on class actions.   *See, e.g., McCrary*, 2014 U.S. Dist. LEXIS 8443, at *24-25 (expressly holding that *Carrera* is not "the law in the Ninth Circuit").   The Seventh Circuit also declined to abandon well-established ascertainability guidelines, recognizing that imposing narrow new requirements would allow corporations "to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits." *Butler*, 727 F.3d at 801.

Moreover, prominent professors of civil procedure have taken the rare step of urging the Third Circuit to reverse the heightened ascertainability requirement. *See, e.g.,* Kindall Decl., Ex. H (Brief of *Amici Curiae* Professors of Civil Procedure and Complex Litigation in Support of Petition for Rehearing *En Banc*).

---

**REDACTED TEXT**

].   Finally, *Mahfood v. QVC, Inc.,* No. 06-0659-AG(ANx), 2008 WL 5381008, at *5 (C.D. Cal. Sept. 22, 2008) is simply irrelevant, as the court concluded that there was no "single practice, policy or defect" that caused plaintiffs' alleged harm   Here, Plaintiffs' and the Class' damages all arise from Defendant's identical "natural" misrepresentations.

[19]   Finally, even if the Court were to conclude that damages cannot be calculated on a class-wide basis, the Class would still be entitled to the injunctive relief Plaintiffs seek in Prayer for Relief "B" in the Amended Complaint.

13

---

1   They explain that *Carrera* has no "coherent basis" and will serve only to harm

2   consumers.  *See generally id.*

3            Contrary to *Carrera*, "[i]n this Circuit, it is enough that the class definition

4   describes a set of common characteristics sufficient to allow a prospective plaintiff

5   to identify himself or herself as having a right to recover based on the description."

6   *McCrary,* 2014 U.S. Dist. LEXIS 8443, at *24-25) (quoting *Moreno v. AutoZone,*

7   *Inc.*, 251 F.R.D. 417, 421 (N.D. Cal. 2008)).   Accordingly, a consumer class is

8   ascertainable when "the class definition clearly defines the characteristics of a class

9   member by providing a description of the allegedly offending product and the

10  eligible dates of purchase." *McCrary,* 2014 U.S. Dist. LEXIS 8443, at *25; *Ries*,

11  287 F.R.D. at 535 ("[t]here is no requirement that the 'identity of class members …

12  be known at the time of certification'") (quoting *Wolph*, 272 F.R.D. at 482).

13           Plaintiff's proposed Class definitions satisfy this ascertainability standard.

14  The Class definitions specify the Products at issue and the time periods in which

15  putative Class Members must have purchased those products.  *See* Pl. Mot. at i-iii.

16  Moreover, as is common practice, Class Members can submit affidavits or

17  declarations to confirm their membership in the Class here.  *Astiana*, 291 F.R.D. at

18  500 (class of customers ascertainable even if class members did not retain receipts

19  and defendant did not have records of consumer purchases); *Ries*, 287 F.R.D. at

20  532 (lack of documents recording purchases is not "in itself, an insurmountable

21  obstacle" and ascertainability requirement can be met through self-identification

22  via affidavits); *Wolph*, 272 F.R.D. at 482; *Zeisel*, 2011 WL 2221113, at *6;

23  *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 592 (C.D. Cal. 2011);  *Thurston*, 2013

24  WL 5664985, at *3; *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365,

25

26

27

28                                               14

377 (N.D. Cal. 2010).[20]   Accordingly, Plaintiffs' proposed Classes satisfy Rule 23's ascertainability requirements.[21]

## V. There are No Material State Law Variations that Would Preclude Certification of a Class

### A. It is Proper to Apply California Law to a Nationwide Class in this Case

Plaintiffs recognize this Court's ruling in *Grodzitsky v. American Honda Motor Co., Inc.,* No. 12-cv-01142-SVW-PLAx, 2014 WL 718431 (C.D. Cal. Feb. 19, 2014). That being said, under California law, the defendant must "shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims." *Washington Mutual Bank, FA v. Superior Court,* 24 Cal.4th 906, 921, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (2001). Here, Defendant has done little to meet its burden beyond citing *Mazza v American Honda Motor Co., Inc.,* 666 F.3d 581 (9th Cir. 2012). A similar argument was recently advanced in this court:

---

[20]   Notwithstanding this long-standing practice, Defendant incorrectly argues, relying largely on *Carrera,* that Class members should not be allowed to self-identify through declarations. However, "the fact that particular persons may make false claims of [Class] membership does not invalidate the objective criteria used to determine inclusion" because "sufficient notice can cure confusion and these issues may be addressed later in the litigation." *McCrary,* 2014 U.S. Dist. LEXIS 8443, at *26.

[21]   Defendant's reliance on *Konik v. Time Warner Cable,* No. 07-763 SVW (RZx), 2010 WL 8471923 (C.D. Cal. Nov. 24, 2010) to argue that there is no way to ascertain which Class Members were actually harmed (Def. Mem. at 25) is misplaced. In *Konik,* the court held that plaintiffs failed to establish the class was ascertainable because they had not provided "any evidence whatsoever that other former Adelphia subscribers experienced service interruptions" or any methodology for determining whether such interruptions had occurred. *Id.* at *10. Here, by contrast, as discussed above, Plaintiffs' expert methodology will demonstrate that *every* consumer who purchased a Product – and thus *every* Class Member – paid a premium due to (and thus was injured by) Defendant's "natural" misrepresentation.

15

> Defendants interpret *Mazza* as eliminating the case-specific inquiry required by the California Supreme Court and holding *as a matter of law* that California and other states' consumer laws materially differ *in all cases* and other states have a greater interest in the application of their law *in all cases.*

*Bruno v. Eckhart Corp.,* 280 F.R.D. 540, 548 (C.D. Cal. 2012) (Carter, J.).  The court rejected this view of *Mazza,* and reaffirmed that defendants bear the burden of showing that California law should not apply based on "the law and facts of the *particular* case."  *Id.* at 547.  Here, Defendant is headquartered in Los Angeles, all seven individuals involved in the marketing of the Products are employed at Defendant's Los Angeles headquarters and   the false and misleading advertising emanated from California.  Under these particular facts, application of California law to a nationwide class is appropriate.

### B.   In the Event the Court Declines to Certify a Nationwide Class, It Should Certify a Multistate Class

The Court can also certify a class, with or without subclasses, comprised of persons from states whose laws are materially similar to California's.  The sole question is whether minor variations in those states' laws create manageability issues sufficient to defeat predominance.  As this Court has held, "[d]efendants, as the parties asserting that variations in state law defeat predominance, bear the burden on the issue."  *Keegan v. Am. Honda Motor Co., Inc.,* 284 F.R.D. 504, 541 (C.D. Cal. 2012), *leave to appeal denied,* 12-80138, 2012 WL 7152289 (9th Cir. Nov. 9, 2012).

Defendant wrongly asserts that there are, in essence, no states whose consumer protection laws are sufficiently similar to make grouping them together a manageable exercise.  Def. Br., at 17.  It is important to note that most of the state laws at issue are explicitly based on the FTC Act.[22]  A core of these statutes are

---

[22] For a history of the "little FTC Acts," *see, e.g.,* Note, *Toward Greater Equality in Business Transactions: A Proposal to Extend the Little FTC Acts to Small*

16

sufficiently similar that a class action comprised of consumers in those states would not raise manageability concerns. Plaintiffs believe that the Court should certify a class composed of consumers from Alaska, Arkansas, California, Connecticut, Delaware, the District of Columbia, Florida, Hawai'i, Illinois, Massachusetts, Michigan, Missouri, New York, Rhode Island, Vermont, Washington and Wisconsin.[23]   If necessary, the Court could also certify the following three case management subclasses:[24]

---

*Businesses,* 96 Harv. L. Rev. 1621, 1623 (1983). Many of the "Little FTC" Acts specifically incorporate a requirement that in interpreting the statutes, courts should give consideration and weight to the FTC's interpretations of the FTCA. *See, e.g.,* Alaska Stat. Ann. § 45.50.545 (West); Conn. Gen. Stat. Ann. § 42-110b (West); Haw. Rev. Stat. § 480-2 (West); 815 ILCS 505/2; Mass. Gen. Laws Ann. ch. 93A, § 2 (West); R.I. Gen. Laws Ann. § 6-13.1-3 (West); Vt. Stat. Ann. tit. 9, § 2453 (West); Wash. Rev. Code Ann. § 19.86.920 (West); *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 443 (D.C. 2013); *Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen., Dep't of Legal Affairs, State of Fla.,* 761 So. 2d 1256, 1260 (Fla. Dist. Ct. App. 2000). Even states that did not specifically reference the FTC in their statutes often give considerable weight to the FTC interpretations of its parallel provisions. *See, e.g., State by Lefkowitz v. Colorado State Christian Coll. of Church of Inner Power, Inc.,* 76 Misc. 2d 50, 54, 346 N.Y.S.2d 482, 487 (Sup. Ct. 1973) (cited in *People ex rel. Spitzer v. Applied Card Sys., Inc.,* 27 A.D.3d 104, 107, 805 N.Y.S.2d 175, 178 (2005) ("[T]he legislative purpose in enacting s 349 of the General Business Law was to follow in the steps of the Federal Trade Commission with respect to the interpretation of deceptive acts and practices outlawed in Section 5 of the Federal Trade Commission Act (15 U.S.C.A. s 45)");   *Curtis Lumber Co., Inc. v. Louisiana Pac. Corp.,* 618 F.3d 762, 779 (8th Cir. 2010) (noting that "Arkansas is one of many states that enacted a deceptive and unfair trade practices act, or a 'little FTC act,' in the 1960s or 1970s" and looking to decisions by the FTC and by other states with "little FTC acts" for interpretive guidance).

[23]   Plaintiffs withdraw their suggestion that the multistate group include the states of Maine, Nebraska, New Hampshire and New Jersey.

[24] Case management subclasses are authorized by Rule 23(d) and  "are appropriate when 'there is no actual conflict among class members in the underlying claims common to the entire class' and the subclass is 'created solely to expedite

17

---

a. California (to deal with the UCL's requirements for named-plaintiff standing);[25]

b. Michigan (to address Michigan's intent requirement);

c. Illinois and Wisconsin (to address intent to induce reliance).

### 1. *Reliance and Causation*

Defendant wrongly argues that Arkansas, Connecticut, Florida, Hawai'i, Illinois, Massachusetts, Missouri, New York, Vermont, Washington and Wisconsin do not permit a presumption of reliance or causation on a class-wide basis. This is not the case:

- ***Arkansas:*** Defendant's only authority for the proposition that Arkansas requires an individualized showing of reliance is *M.S. Wholesale Plumbing, Inc. v. Univ. sports Pubn's. Co.,* 2008 U.S. Dist. LEXIS 124000 (E.D. Ark. May 22, 2008), which cites no Arkansas law for the proposition – only an Eighth Circuit decision applying Minnesota law. It is not even clear that the *Wholesale Plumbing* court was *trying* to apply Arkansas law.

- ***Connecticut:*** The Connecticut Supreme Court has specifically held, contrary to Defendant's argument, that "[g]eneralized evidence may be used to prove causation and ascertainable loss" in a class action under the Connecticut Unfair Trade Practices statute. *Artie's Auto Body, Inc. v. The Hartford Fire Insurance Co.,* 287 Conn. 208, 220-34, 947 A.2d 320, 331-39 (2008) (limiting *Collins v. Anthem Health Plans, Inc.,* 880 A.2d 106 (Conn. 2005), cited by Defendant, to its facts).

---

resolution of the case by segregating [a distinct legal] issue [that is] common to some members of the existing [class].'" Newberg on Class Actions § 7:32 (5th ed.) *citing Cesale v. Kelly,* 257 F.R.D. 396, 408-09 (S.D.N.Y. 2009).

[25] Contrary to Defendant's speculation, Plaintiffs are not dropping their UCL claim, but they are withdrawing their claim that Defendant's conduct violated the unfair (as opposed to deceptive) prong of the statute. As noted above, the California Plaintiffs have standing, as they both testified that they actually relied upon the challenged representation when they made their purchases. *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 327, 246 P.3d 877, 888 (2011).

---

- **Florida:** Defendant cites *Green v. McNeil Nutritionals, LLC,* 2005 WL 3388158 (Fla. Cir. Ct. Nov. 16, 2005), but this decision is an outlier, as recognized in *Fitzpatrick v. General Mills, Inc.,* 263 F.R.D. 687, 694 (S.D. Fla. 2010) (finding that causation does not require subjective evidence of reliance, only evidence that the practice was likely to deceive a consumer acting reasonably in the circumstances) (citing *Davis v. Powertel, Inc.,* 776 So.2d 971, 974 (Fla. 1st DCA 2000) and *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC,* 332 Fed. App'x. 565, 567 (11th Cir. 2009).

- **Hawai'i:** *Cabbat v. Philip Morris USA, Inc.,* 2014 WL 32172 (D. Haw. Jan 6, 2014) involved whether common proof could be used to show injury and causation in a case involving whether light cigarettes caused health injuries. The court found that injury depended on establishing that smokers compensated for the lower tar and nicotine in light cigarettes by, for example, inhaling more deeply and taking more frequent or longer puffs, and this could not be determined on a class-wide basis. *Id.* at *10. Here, in contrast, Plaintiffs contend that the price of the product that everyone bought was artificially inflated by misrepresenting that it was natural, causing uniform injury in the form of an artificially high price. Thus, the general rule, as articulated by the Ninth Circuit, holds: individualized proof of reliance is *not* required to show causation under the Hawai'i statute. *Yokohama v. Midland Nat. Life Ins. Co.,* 594 F.3d 1087, 1092 (9th Cir. 2010) (reversing *Yokohama v. Midland Nat. Life Ins. Co.,* 243 F.R.D. 400, 411 (D. Haw. 2007), which held that proof of individualized reliance was required to show causation).

- **Illinois:** Defendant is incorrect that a class-wide inference of causation is not permitted under the Illinois statute. "[I]nnumerable ICFA class actions have been certified (and upheld) without requiring individualized showings of proximate causation." *Phillips v. Ford Motor Co.,* 99-L-1041, 2003 WL 23353492 (Ill. Cir. Ct. Sept. 15, 2003); *In re Glaceau Vitaminwater Mktg. & Sales Practice Litig.,* 11-MD-2215 DLI RML, 2013 WL 3490349 (E.D.N.Y. July 10, 2013) ("although causation is one of the elements of a claim under the ICFA, there is no mandate 'that every attempt to certify a consumer fraud class must fail due to the need for individualized proximate cause hearings' and "innumerable ICFA class actions have been certified (and upheld) without requiring individualized showings of proximate causation.") (quoting *Phillips*).

- **Massachusetts:** Defendant's citation to *Kwaak v. Pfeizer,* 71 Mass. App. Ct. 293 (2007) is unavailing; the court found it would be impossible to presume class-wide causation in that case because not all members of the class had been exposed to the allegedly false or misleading advertising. *Id.* at 300. Indeed, the *Kwaak* court specifically distinguished *Aspinall v. Philip Morris Companies, Inc.,* 442 Mass. 381, 813 N.E.2d 476 (2004), on the grounds that there, "every product was mislabeled." 71 Mass. App. Ct. at 300. The same is true here. Thus, *Kwaak* is not contrary to the general rule in Massachusetts, that the materiality of a false or misleading statement can be used to establish causation. *Casavant v. Norwegian Cruise Line, Ltd.,* 76 Mass. App. Ct. 73, 77-78, 919 N.E.2d 165, 169-70 (2009), *aff'd,* 460 Mass. 500, 952 N.E.2d 908 (2011); *accord, Bellerman v. Fitchburg Gas & Elec. Light Co.,* No. WOCV200900023B, 2013 WL 518526 (Mass. Super. Jan. 7, 2013).

19

- **Missouri:** *Campbell v. Purdue Pharma. L.P.,* No. 02cv00163 TCM, 2004 WL 5840206 (E.D. Mo. June 25, 2004) determined that causation and injury could not be determined on a class-wide basis because injury was addiction to OxyContin, and causation was complicated because the drug had to be prescribed by a physician, raising the learned intermediary defense. Where, as here, a class of plaintiffs is exposed to common misrepresentations in violation of the Missouri statute, "class members are not individually required to show what they would or would not have done had the product not been misrepresented and the risks known." *Plubell v. Merck & Co., Inc.,* 289 S.W.3d 707, 714 (Mo. Ct. App. 2009); *accord, In re Actimmune Mktg. Litig.,* C 08-02376 MHP, 2010 WL 3463491 (N.D. Cal. Sept. 1, 2010).

- **New Hampshire:** *Lawrence v. Philip Morris USA, Inc.,* 164 N.H. 93, 53 A.3d 525 (2012), like the *Cabbat* case from Hawai'i, was a case about light cigarettes, and like *Cabbat,* the *Lawrence* court held that public knowledge of the "compensation phenomenon" was widespread as a result of hundreds of publications and televised news reports during the class period (164 N.H. at 99), and this created individual issues which predominated over the class issues. Defendant can point to no similar issue here, and thus there is no reason to believe that New Hampshire would preclude class-wide evidence of causation and injury.

- **New York:** Defendant cites a single district court case, *Weiner v. Snapple Beverage Corp.,* No. 07 Civ. 8742(DLC), 2010 WL 3119452, at *6 (S.D.N.Y. Aug. 5, 2010), which did not hold that injury, damages and causation could not be established on a class-wide basis – the court simply held that plaintiff had failed to show how it could be done in that case. As the same court recently noted, class-wide causation, injury and damages may be shown in cases such as this where a mass-marketed product with a materially false or misleading label is sold at a premium price. *Ebin v. Kangadis Food Inc.,* 13 CIV. 2311 JSR, 2014 WL 737960 (S.D.N.Y. Feb. 25, 2014) (noting that "even if a class member actively wanted to buy pomace instead of 100% pure olive oil, they nevertheless paid too much for it."); *accord, Ackerman v. Coca-Cola Co.,* CV-09-0395 (JG), 2010 WL 2925955 (E.D.N.Y. July 21, 2010) (allegations sufficient where "[d]efendants command a premium price for vitamin water by distinguishing it from soft drinks (including their own), and by marketing and advertising it as a fortified beverage, a dietary supplement in liquid form.")

- **Vermont:** Defendant wrongly suggests that *Salatino v. Chase,* 2005 WL 5872281 (Vt. Super. Court Feb. 28, 2005) requires an individual inquiry into the reaction of each class member to the alleged misrepresentation was required. The *Salatino* court differentiated between two types of statutory consumer fraud cases in Vermont: those based on transactions made "in reliance upon false or fraudulent representations or practices," where such an individualized inquiry was required, or cases – such as this one – which are based on "damages or injury [sustained] as a result of any false or fraudulent representations or practices." Plaintiff in *Salatino* could not prevail under the latter provision only because the alleged injury was unnecessary cataract surgery, and there was no way to presume that such surgery was unnecessary in all cases. Here, in contrast, the injury is purely economic and is common to the whole class: all plaintiffs paid a premium which Defendant was able to charge because of its false representation.

20

---

- *Washington:* Far from suggesting that Washington does not permit a class-wide determination of causation and injury, *Helde v. Knight Transp., Inc.*, C12-0904RSL, 2013 WL 5588311 (W.D. Wash. Oct. 9, 2013), simply found that plaintiffs had failed to show how this could be done where the case involved false advertising to which not all consumers had been exposed. *Id.* at *5. Here, in contrast, the misrepresentation was on the front of the product label, and all consumers were exposed to it. A plaintiff in a Washington Consumer Protection Act case can show injury and causation simply by demonstrating the "'payment of money wrongfully induced . . . .'" *Panag v. Farmers Ins. Co. of Washington,* 166 Wash. 2d 27, 63-64, 204 P.3d 885, 902-03 (2009) (quoting *Chattanooga Foundry & Pipe Works v. City of Atlanta,* 203 U.S. 390, 396 (1906)). In this case, because Defendant charged consumers inflated prices based on a misrepresentation on the labels of its products, all plaintiffs were wrongly induced to pay this premium.

- *Wisconsin:* Defendant's citation to *Wyatt v. Philip Morris USA, Inc.,* 09-C-0597, 2013 WL 4046334, at * 5 (E.D. Wis. Aug. 8, 2013) ignores the fact that the Court specifically declined to rule on the possibility that plaintiff might prove "that Philip Morris's deceptive labeling caused the market price for its light cigarettes to be higher than it would have been had the labeling been accurate," because the plaintiff did not adopt the theory. *Id.* In contrast, plaintiffs in this case expressly adopt this theory.

## 2. Injury

Defendant suggests that the standard for proving injury is different in states that articulate the standard as "ascertainable loss" rather than "damages," "actual damages" or "injury in fact." Def. Br. at 18-19, n.15. Yet Defendant fails to indicate how any of these standards actually differ in a case where Plaintiffs are alleging that the class suffered economic damages by overpaying for products that were materially misrepresented, and Plaintiff cannot fathom how the minor linguistic distinctions would make a difference in this case. *Cf. Pecover v. Elec. Arts Inc.,* C 08-2820 VRW, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ("The court finds EA's mere listing of so-called 'material differences' in appendices, without providing accompanying analysis, to be almost entirely unhelpful.").[26]

---

[26] Based on additional research, Plaintiff agrees that Maine's statute, which requires "substantial" injury, is materially different in the context of the allegations in this case. Accordingly, Plaintiff withdraws the request that Maine be included in the multistate grouping.

21

### 3. Intent

Defendant argues that Michigan requires an "intent to deceive," and otherwise directs the court to one of its multistate appendices to determine which other states Defendant might be claiming to have a different intent standard. But in Michigan, either "intent to deceive" *or* "purposeful conduct" is sufficient. *Westfield Ins. Co. v. D & G Dollar Zone*, 306408, 2013 WL 951086 (Mich. Ct. App. Feb. 28, 2013) *appeal denied*, 836 N.W.2d 689 (Mich. 2013). Where the claims "all stem from the same pattern of misrepresentation . . . they all are actionable under the Consumer Protection Act." *Dix v. Am. Bankers Life Assur. Co. of Florida*, 429 Mich. 410, 418, 415 N.W.2d 206, 210 (1987). Since there is no question that the "all natural" misrepresentations displayed on the PDPs were not accidental, scienter under Michigan law is not an issue. Even if the Court were to view this as a materially different element, it would not pose a manageability issue. This one element can be addressed through the creation of a Michigan sub-class.

Reviewing Defendant's Appendix B, it appears that Illinois and Wisconsin have a requirement that a statement be made with intent that others will rely on it.[27] While that might be an outcome-determinative issue in some cases, in this case it will not: Plaintiff is complaining about express representations Defendant knowingly printed on the front of the labels for its products based on its own

---

[27] Defendant's Appendix wrongly states that California requires proof of intent to recover damages under the CLRA. Def. Appx. B, at 3. A defendant may raise lack of intent and bona fide error as a special defense to a damages action under the statute, but only if the Defendant made "appropriate correction" after being sent a pre-filing demand letter in accordance with Cal. Civ. Code § 1782. Defendant made no such "correction" in this case. Defendant's Appendix also indicates that Alaska and Delaware require intent to induce reliance in an omissions case. However, this case involves affirmative misrepresentations, and thus this standard does not apply.

22

market research and analysis.  There can be no doubt that Defendants intended consumers to rely on those representations.[28]

### 4.     Statutory Exemptions

Defendant argues that several states' consumer protection statutes exempt conduct regulated by a federal agency.  Def. Br., at 19, n. 17.  However, the laws of Connecticut, Michigan, Massachusetts, Washington, and Rhode Island do not exempt the conduct alleged here that violates federal standards.[29]  Moreover, in the

---

[28] In the event that the Court believes it would be useful to do so, it could create a sub-class of Illinois and Wisconsin consumers.

[29] Plaintiffs claim that Defendant's "natural" labels are false or misleading.  While FDA has decided *not* to regulate the labeling of a cosmetic product as "natural" (as stated in its letter regarding *Astiana v. The Hain Celestial Group,* attached as Ex. F to the Weinberger Decl. in Support of Defendant's Motion to Dismiss, Dkt. No. 38-1)*,* the FDCA deems any cosmetic product to be misbranded if its "labeling is false or misleading in any particular." 21 U.S.C. §§ 352(a); 562(a).  The statutory exemption of these five states do not apply in such a situation.  *See* Conn. Gen. Stat. Ann. § 42-110c(a) (exempting "[t]ransactions or actions otherwise *permitted* under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States"; Mich. Comp. Laws Ann. § 445.904 (exempting "[a] transaction or conduct *specifically authorized* under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States); *Liss v. Lewiston-Richards, Inc.,* 732 N.W.2d 514, 519 (Mich. 2007) (exemption requires a transaction that is "explicitly sanctioned"); Mass. Gen. Laws Ann. ch. 93A § 3 (exempting "transactions or actions otherwise *permitted* under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States"); *Aspinall v. Philip Morris, Inc.,* 453 Mass. 431, 437, 902 N.E.2d 421, 426 (2009) (MA statutory exemption did not apply because Defendants failed to show they were given *affirmative permission* to use the tobacco descriptors at issue, as required to claim exemption); R.I. Gen. Laws Ann. § 6-13.1-4 (exempting "actions or transactions *permitted* under laws administered by the department of business regulation or other regulatory body or officer acting under statutory authority of this state or the United States;" *Chavers v. Fleet Bank (RI), N.A.*, 844 A.2d 666, 681 (R.I. 2004) ("the party claiming the exemption must initially show that a 'regulatory body or officer' regulates the general activity at issue… …and then the opposing party must show that the regulation does not cover the specific

23

---

event that there is any question as to whether these exemptions apply, it would not pose any significant manageability issues.  Whether Defendant's conduct is subject to these laws is a purely legal issue that may be decided well in advance of trial, such as through a motion for summary judgment.  If the Court determines that one or more state's exemption applies, those statutory claims fail, without affecting the claims of the rest of the Class.

### 5.    Other Issues

The remainder of Defendant's claims do not go to liability or pose a manageability issue.   While Defendant is correct that states have different provisions with respect to the availability of attorneys' fees and trial by jury, such differences are not material as defined by *Mazza* – they do not "have a significant effect on the outcome of the trial."  666 F.3d at 590-91.  The ability of a successful litigant to obtain attorneys' fees is not relevant to an adjudication of the merits. And, Courts routinely decide certain claims while submitting others to a jury.[30]

Moreover, whether a jury trial is available in federal court is determined as a matter of *federal* law.  *See Mayer v. Gary Partners & Co., Ltd.*, 29 F.3d 330, 333 (7th Cir. 1994) (cited with approval in *Nathan v. Boeing Co.,* 116 F.3d 422, 424 (9th Cir. 1997); *see also Granite State Ins. Co. v. Smart Modular Technologies, Inc.,* 76 F.3d 1023, 1026-27 (9th Cir. 1996).  Since Plaintiffs seek damages, they

---

acts in question."); Wash. Rev. Code Ann. § 19.86.170 (exempting "actions or transactions . . . *permitted* by any other regulatory body or officer acting under statutory authority of this state of the United States); *Walker v. Wenatchee Valley Truck & Auto Outlet, Inc.,* 155 Wash. App. 199, 211, 229 P.3d 871, 878 (2010) (WA exemption did not apply because the activities in question were not "*expressly permitted* instead of merely being not prohibited") (emphasis added).

[30] *Warma Witter Kreisler, Inc. v. Samsung Electronics Am., Inc.,* CIVA 08-5380 (JLL), 2010 WL 1424014 (D.N.J. Apr. 8, 2010), cited by Defendant, failed to consider whether this difference would have an effect on the litigation.

24

1  are entitled to a jury trial.  *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S.

2  340, 352, (1998).

3       As this review of authority makes clear, the variations in state laws are

4  minor and manageable.  Certainly, they do not "predominate" over the central

5  issues in the case:  whether Defendant's "natural" representations were materially

6  misleading to reasonable consumers, and whether the class paid a price premium as

7  a result of those materially misleading representations.

8  **VI.    Conclusion**

9       For the reasons stated herein, Plaintiffs respectfully request the Court certify

10  the classes described in their Motion for Class Certification, appoint them as class

11  representatives, and appoint Lead and Liaison Class Counsel as indicated in the

12  proposed order submitted with their Motion.

15  Dated:  March 24, 2014       Respectfully submitted,

17  By: /s/_____Mark P. Kindall_____
Jeffrey S. Nobel (admitted *pro hac vice*)

18  Mark P. Kindall (State Bar No. 138703)
Robert A. Izard (admitted *pro hac vice*)

19  Nicole A. Veno (admitted *pro hac vice*)
**IZARD NOBEL LLP**

20  29 South Main Street, Suite 305
West Hartford, CT 06107

21  Telephone: (860) 493-6292
Facsimile: (860) 493-6290

22  jnobel@izardnobel.com
mkindall@izardnobel.com

23  rizard@izardnobel.com
nveno@izardnobel.com

24  Elizabeth P. Lin (State Bar No. 174663)

25  **THE LIN LAW FIRM, APLC**
2705 S. Diamond Bar Blvd., Suite 398

26  Diamond Bar, CA 91765
Telephone: (909) 595-5522

27  Facsimile: (909) 595-5519
elizabethl@thelinlawfirm.com

28  25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ronen Sarraf (admitted *pro hac vice*)
Joseph Gentile (admitted *pro hac vice*)
**SARRAF GENTILE LLP**
1055 Franklin Avenue, Suite 204
Garden City, New York 11530
Tel: (516) 699-8890
Fax: (516) 699-8968
ronen@sarrafgentile.com
joseph@sarrafgentile.com

Attorneys for Plaintiffs JULIE FAGAN,
MELISSA PENNLLATORE, AMY SAPEIKA
and SHELLEY TRINCHERO, Individually and on
Behalf of All Others similarly Situated

26