HAROLD P. WEINBERGER (*admitted pro hac vice*)
hweinberger@kramerlevin.com
EILEEN M. PATT (*admitted pro hac vice*)
epatt@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

Attorneys for Defendant
NEUTROGENA CORPORATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE FAGAN, MICHAEL FAGAN, MELISSA PENNELLATORE, AMY SAPEIKA and SHELLEY TRINCHERO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEUTROGENA CORPORATION,<br><br>Defendant. | Case No.: EDCV 13-01316 SVW (OPx)<br><br>**NEUTROGENA CORPORATION'S SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**[PUBLICLY REDACTED VERSION]**<br><br>Date: June 2, 2014<br>Time: 1:30 p.m.<br>Before: Hon. Stephen V. Wilson<br>Courtroom: 6 |

# Table of Contents

Page

Table of Authorities .................................................................................................. iii

I. INTRODUCTION ............................................................................................... 1

II. PLAINTIFFS FAIL TO SATISFY THEIR EVIDENTIARY BURDEN TO SHOW THAT THEIR NEW MODELS CAN PROVE INJURY AND DAMAGES CLASSWIDE .................................................................................. 2

    A. Plaintiffs Fail to Present Evidence Demonstrating a Classwide Premium ............................................................................................ 3

        (1) Mr. Weir's Hypothesis Improperly Relies on a Fraud on the Market Theory of Harm ........................................................ 3

        (2) Under *Comcast*, Plaintiffs Must Present Evidence Demonstrating a Classwide Premium ............................................................... 4

    B. Mr. Weir's Methodologies Are Incapable of Yielding a Reliable and Relevant Measure of Harm on a Classwide Basis ........................... 6

        (1) Mr. Weir Improperly Assumes that All Class Members Are Injured .................................................................................... 6

        (2) Mr. Weir's Methodologies Lack Sufficient Detail to Affirmatively Demonstrate that his Methods Can Establish Classwide Injury ...................................................................... 7

        (3) Mr. Weir's Methodologies Require Myriad Individualized Inquiries and Present Intractable Management Problems ........ 10

III. CONCLUSION ................................................................................................... 12

i

NEUTROGENA'S SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION Case No.:  EDCV 13-01316 SVW (OPx)
KL3 2970919.2

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*Astiana v. Ben & Jerry's Homemade, Inc.*,
    2014 WL 60097 (N.D. Cal. Jan. 7, 2014) .......................................................... 4, 5 n.5

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ................................................................................... *passim*

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ............................................................................................ 2 n.2

*Espenscheid v. DirectSat USA, LLC*,
    705 F.3d 770 (7th Cir. 2013) ............................................................................ 11 n.10

*Gartin v. S&M NuTec LLC*,
    245 F.R.D. 429 (C.D. Cal. 2007) (Wilson, J.) ....................................................... 2, 10

*In re Google AdWords Litig.*,
    2012 WL 28068 (N.D. Cal. Jan. 5, 2012) .................................................................. 4

*Guido v. L'Oreal, USA, Inc.*,
    2013 WL 3353857 (C.D. Cal. July 1, 2013) ................................................... 5, 10 n.9

*Harris v. Vector Mktg. Corp.*,
    753 F. Supp. 2d 996 (N.D. Cal. 2010) .................................................................... 11

*Konik v. Time Warner Cable*,
    2010 WL 8471923 (C.D. Cal. Nov. 24, 2010) (Wilson, J.) ....................................... 2

*Leyva v. Medline Indust. Inc.*,
    716 F.3d 510 (9th Cir. 2013) ............................................................................. 10 n.9

*Lindell v. Synthes USA*,
    2014 WL 841738 (E.D. Cal. Mar. 4, 2014) ......................................................... 10 n.9

*McCrary v. Elations Co.*,
    2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) ....................................... 10 n.9

*Minkler v. Kramer Labs., Inc.*,
    2013 WL 3185552 (C.D. Cal. Mar. 1, 2013) ........................................................... 12

*In re Pom Wonderful*,
  2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) .................................................. 3, 3 n.4, 8

*Red v. Kraft Foods, Inc.*,
  2012 WL 8019257 (C.D. Cal. Apr. 12, 2012) ............................................................. 11

*Southeast Laborers Health & Welfare Fund v. Bayer Corp.*,
  444 F. App'x 401 (11th Cir. 2011) ................................................................................. 3

*Thurston v. Bear Naked, Inc.*,
  2013 WL 5664985 (S.D. Cal. July 30, 2013). ........................................................ 5 n.5

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ....................................................................................... 12

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) .............................................................................................. 1, 2

*Weiner v. Snapple Beverage Corp.*,
  2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ............................................ 7, 8, 9, 10, 11 n.10

**Statutes & Rules**

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

## I. INTRODUCTION[1]

The Supreme Court decisions in *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011) and *Comcast Corp. v. Behrend,* 133 S. Ct. 1426 (2013), make clear that Plaintiffs must affirmatively demonstrate with evidence that injury can be established on a classwide basis. Injury methodologies cannot survive the "rigorous analysis" required to determine compliance with Rule 23 where, as here, they are devoid of detail concerning key conceptual, implementation and data issues, and are based on mere speculation that, assuming such issues could be overcome, a classwide premium could be computed.

For the first time in reply, Plaintiffs offer a declaration of a purported expert, Mr. Colin Weir ("Weir Decl."), who presents two new methodologies in an attempt to prove classwide injury and damages. Specifically, Mr. Weir opines that "hedonic regression" and "conjoint analysis," neither of which is commonly used in consumer fraud cases, can be employed to calculate a supposed premium associated with the Challenged Claims. But as was made clear during Mr. Weir's April 3 deposition ("Weir Tr."), Mr. Weir, who has never presented testimony using either analysis (Weir Tr. 65, 121), has failed to provide evidentiary proof demonstrating that such a premium even exists, contravening recent precedent interpreting *Comcast.* Moreover, Mr. Weir's description of these proposed methodologies is woefully incomplete, lacking detail necessary for the Court to determine whether the calculations he suggests are even possible, much less whether they satisfy the rigors of Rule 23. Finally, Mr. Weir acknowledges that his methods will require indefinite individual inquiries to assign class members to one or more numerous and undefined damages "subclasses," which defeats predominance and

---

[1] Terms defined in Neutrogena Corporation's Opposition to Plaintiffs' Motion for Class Certification ("Def. Br.") have the same meaning herein.

creates manageability issues that Plaintiffs fail even to attempt to address.

With this memorandum, Neutrogena submits the Declaration of Keith R. Ugone, Ph.D., in Support of Neutrogena's Surreply in Opposition to Plaintiffs' Motion for Class Certification ("Ugone Reply Decl."), which demonstrates that Mr. Weir's methodologies are incapable of yielding a reliable or relevant measure of harm on a classwide basis.[2] Accordingly Plaintiffs have not satisfied their burden under Rule 23(b)(3).[3]

## II. PLAINTIFFS FAIL TO SATISFY THEIR EVIDENTIARY BURDEN TO SHOW THAT THEIR NEW MODELS CAN PROVE INJURY AND DAMAGES CLASSWIDE

Plaintiffs submitted no evidence regarding injury with their motion papers. Despite inappropriately taking a second bite at the apple, they still have not met their burden to affirmatively demonstrate with "sufficient evidence, not just 'some evidence'" that injury is capable of classwide proof. *Konik v. Time Warner Cable*, 2010 WL 8471923, at *3 (C.D. Cal. Nov. 24, 2010) (Wilson, J.) (citation omitted), *WalMart*, 131 S. Ct. at 2565. *See, Gartin v. S&M NuTec LLC*, 245 F.R.D. 429, 435 (C.D. Cal. 2007) (Wilson, J.) ("mere promises that issues relating to predominance or superiority can be overcome are inadequate.").

---

[2] For the same reasons, Mr. Weir's testimony is excludable under *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Supreme Court has made clear, however, that a *Daubert* motion is not necessary to raise this issue. *Comcast*, 133 S. Ct. at 1431 n.4.

[3] In addition, Plaintiffs' model of harm must "be consistent with its liability case." *Comcast*, 133 S. Ct. at 1433. In their FAC, Plaintiffs allege that they were injured by "pa[ying] a premium for the Products over comparable products that are not marketed as natural" and compute the alleged premium by calculating the difference between the Products and the allegedly comparable products. FAC ¶ 24. In contrast, Mr. Weir opines that "[t]he appropriate calculation here is not a direct comparison of one product against another[.]" Weir Decl. ¶ 41. Plaintiffs' new methods are plainly inconsistent with the harm alleged in the FAC, and thus fail to satisfy *Comcast* for this reason as well.

NEUTROGENA'S SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.: EDCV 13-01316 SVW (OPx)
KL3 2970919.2

### A. Plaintiffs Fail to Present Evidence Demonstrating a Classwide Premium

Plaintiffs argue that "so long as Plaintiffs have articulated a valid damages methodology, Plaintiffs need not have actually 'run' their model yet." Pl. Reply Br. 7. In this case, at least, Plaintiffs are wrong. Because Plaintiffs have not shown that the market for sunscreen products is efficient, Mr. Weir cannot base his methodologies on an untested assumption that there is a classwide premium for the Products. Furthermore, Plaintiffs' argument is contrary to relevant post-*Comcast* precedent because, without such proof, the Court cannot determine whether the model is valid.

#### (1) Mr. Weir's Hypothesis Improperly Relies on a Fraud on the Market Theory of Harm

A presumption that a premium for the Products exists would have to be based on a "fraud on the market" theory, which is often used in securities class actions, where the market is viewed as efficient. Ugone Reply Decl. ¶¶ 13-14. In granting decertification of a class of consumers of allegedly mislabeled juice, the court in *In re Pom Wonderful LLC Marketing & Sales Practices Litig.*, noted that "[a] fraud on the market cannot exist without an efficient market," and "in [an inefficient] market, even a material misrepresentation might not necessarily have any effect on prices. Absent such traceable market-wide influence, and where, as here, consumers buy a product for myriad reasons, damages resulting from the alleged misrepresentations will not possibly be uniform or amenable to class proof." 2014 WL 1225184, at *4 (C.D. Cal. Mar. 25, 2014);[4] *see, Southeast Laborers Health & Welfare Fund v. Bayer Corp.*, 444 F. App'x

---

[4] Although the court in *Pom* held in dicta that *Comcast* does not require damages models to distinguish injured class members from uninjured persons, the court retreated from this statement by later holding that a model must measure only "damages resulting from the alleged misrepresentations." 2014 WL 1225184, at *4. In any event, it is well established, even pre-*Comcast*, that Plaintiffs must demonstrate that injury in fact is a common issue. Def. Br. 9-10.

401, 406 (11th Cir. 2011) ("a fraud on the market theory is insufficient to establish either ascertainable loss or proximate causation" under New Jersey consumer fraud statute).

Plaintiffs have not established that the sunscreen market is efficient, and in fact it is not. Ugone Reply Decl. ¶ 14. Accordingly, Mr. Weir cannot presume but must prove that a premium exists in this case, especially in the face of Neutrogena's evidence demonstrating that no such classwide premium exists and that consumers purchased the product for reasons unrelated to the Challenged Claims. *See, In re Google AdWords Litig.*, 2012 WL 28068, at *15 (N.D. Cal. Jan. 5, 2012) (method of harm incapable of classwide proof where it "would award restitution to advertisers based on a blanket assumption" that ads placed on one platform outperformed ads placed on another platform, "despite evidence that the opposite is true in many cases"). Because Mr. Weir acknowledged that he has not done the work to test his "assumption" that a premium exists (Weir Tr. 57), Plaintiffs cannot satisfy the threshold requirement that they present a methodology capable of quantifying a classwide injury.

### (2) Under *Comcast*, Plaintiffs Must Present Evidence Demonstrating a Classwide Premium

In any event, Plaintiffs' assertion that they need not "run their model," ignores *Comcast*'s directive that a plaintiff must "satisfy through *evidentiary proof* at least one of the provisions of Rule 23(b)". 133 S. Ct. at 1432 (emphasis added). Courts interpreting *Comcast* under similar facts are in accord. For example, in *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097 (N.D. Cal. Jan. 7, 2014), the court refused to certify a class of "all natural" ice cream purchasers because plaintiff failed to offer "any expert testimony demonstrating a gap between the market price of Ben & Jerry's 'all natural' ice cream and the price it purportedly should have sold for if it had not been labeled 'all natural' – or any evidence demonstrating that consumers would be willing to

4

NEUTROGENA'S SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.: EDCV 13-01316 SVW (OPx)
KL3 2970919.2

pay a premium [for the products' attributes], and did in fact pay such a premium." *Id.* at *12.[5]

Similarly, in *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, at *16 (C.D. Cal. July 1, 2013), the court held that, under *Comcast*, "[a] classwide method of awarding relief exists in this case if, in fact, the false advertising at issue had a measurable impact on the market price of Serum. . . . If, however, the false advertising had no such quantifiable impact on Serum's market price, then certification is not appropriate[.]" *Id.* Thus "because plaintiffs have not submitted expert testimony actually demonstrating a gap between the true market price of Serum and its historical market price, they have not met their burden of demonstrating that common questions predominate over individual issues regarding classwide relief." *Id.*

Mr. Weir merely presents two bare methodologies and speculates – without any *Comcast*-required "evidentiary proof" – that such methods are capable of establishing a classwide premium for the Products on account of the Challenged Claims. Moreover, Plaintiffs baldly assert that they "anticipate no difficulties in performing a hedonic regression" with "readily obtainable" data, yet they fail to marshal *any* data or perform even a preliminary regression. Pl. Reply Br. 6 n.11, 7. As to their alternative method, they do nothing more than cite Mr. Weir's opinion that "a conjoint analysis would be appropriate" (*id.* at n.10), and Mr. Weir himself does not even propose a survey design.

---

[5] The fact that no expert testimony was submitted in *Astiana* as opposed to testimony that fails to make the required showing is a distinction without a difference. Plaintiffs also assert that this and the other cases cited by Neutrogena are inapposite because "Plaintiffs are not *assuming* that they suffered damages." Pl. Reply Br. 8 n.16. But that is precisely what Plaintiffs are doing. *See, e.g.,* Weir Tr. 57-58. Plaintiffs cite one post-*Comcast* case, *Thurston v. Bear Naked, Inc.*, for the proposition that Plaintiffs need not "present an expert report at all." Pl. Reply Br. 6-7 n.12. But *Thurston* did not analyze whether the plaintiffs satisfied their evidentiary burden under *Comcast* to establish that injury was susceptible to classwide proof; rather the court held that individual damages calculations, in that case, did not defeat predominance. 2013 WL 5664985, at *10 (S.D. Cal. July 30, 2013).

1 | These failures are even more glaring in light of ████████████
2 | ████████████████████████████████████████████████
3 | ████████████████████████████████████████████████
4 | ████████████████████████████████████████████████
5 | ████████████  ████████  ██████

### B. Mr. Weir's Methodologies Are Incapable of Yielding a Reliable and Relevant Measure of Harm on a Classwide Basis

Even if it were sufficient merely to offer an untested model at this stage, Mr. Weir's proposed methodologies, as he has presented them, are incapable of generating a reliable and relevant measure of classwide harm because they ignore that determination of injury here is not a common issue; lack sufficient detail on critical issues and fail to address significant drawbacks associated with them; and require countless individual inquiries to assign class members to undefined subclasses for damages and other issues.

#### (1) Mr. Weir Improperly Assumes that All Class Members Are Injured

As noted above, Mr. Weir proposes to calculate a constant price premium for each putative class (or undefined "subclass") member, assuming that "*every* Class Member paid a premium because of Neutrogena's 'natural' misrepresentations." Pl. Reply Br. 5; *see* Weir Decl. ¶ 6. As Dr. Ugone explains, Mr. Weir's failure to account for the diversity of purchase drivers ignores the fact that some class members did not suffer an economic loss because, for example, they did not purchase the products on

---

[6] Plaintiffs' assertion that additional discovery may be needed from Neutrogena in order to run their models is belied by Mr. Weir's testimony that ████████████████████████████████████████████████████████████████████████. Moreover, Neutrogena has already produced information sufficient to demonstrate historical changes to the Products' labels, the ████████████████████████████████████████████████ and all other documents that Plaintiffs claimed to need for their class certification motion.

6
NEUTROGENA'S SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.: EDCV 13-01316 SVW (OPx)
KL3 2970919.2

account of the Challenged Claims or purchased the Products because they understood the Claims to mean that the sunscreen ingredients are 100% natural and wanted a physical sunscreen.[7] Ugone Reply Decl. ¶ 25. Further, Mr. Weir ignores evidence that class members – including two named Plaintiffs – paid *nothing* for the Stick products. Def. Br. 10. Because the determination of whether a consumer was injured is itself an individualized issue, the models fail. *Id.* at 9-10.

### (2) Mr. Weir's Methodologies Lack Sufficient Detail to Affirmatively Demonstrate that his Methods Can Establish Classwide Injury

Mr. Weir "provides no details concerning the significant conceptual, implementation, or data issues that would be encountered if his two approaches were adopted." *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *7 (S.D.N.Y. Aug. 5, 2010) (rejecting expert's report offered to demonstrate classwide harm). Because Mr. Weir's description of his model is woefully incomplete, Plaintiffs have not affirmatively demonstrated that they are capable of establishing classwide harm. As the Supreme Court stated in *Comcast*:

> The Court of Appeals simply concluded that respondents provided a method to measure and quantify damages on a classwide basis, finding it unnecessary to decide whether the methodology was a just and reasonable inference or merely speculative. Under that logic, at the class-certification stage any method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be. Such a proposition would reduce Rule 23(b)(3)'s predominance requirement to a nullity.

---

[7] Indeed, Mr. Weir's statement that "[i]ndividual reasons for purchase do no [sic] alter" the premium is contradicted by his own hypothesis that a premium for the Products exists. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7

NEUTROGENA'S SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.: EDCV 13-01316 SVW (OPx)
KL3 2970919.2

133 S. Ct. at 1433 (citations and alterations omitted); *see, In re Pom Wonderful*, 2014 WL 1225184, at *5 (rejecting damages model; the court could not "conduct the required 'rigorous analysis' where there is nothing of substance to analyze.").

In *Snapple*, plaintiff's expert asserted that he would be able to prove the existence of a classwide premium for "all natural" beverages by, as Mr. Weir suggests here, "analyz[ing] all aspects and attributes of a product that impact the product's value". 2010 WL 3119452, at *7. The court rejected this method as unreliable because the expert "readily admits that there may be additional [attributes] that he has not yet considered" and he "does not identify the products to which Snapple should be compared." *Id*. The court was persuaded by the fact that the expert "himself concedes that he has done nothing to confirm that his proposed approaches would be workable in this case." *Id*. at *8.

The shortcomings in Mr. Weir's descriptions of his proposed approaches are remarkably similar and even more extensive and, like in *Snapple,* fail to demonstrate that his methodologies would yield reliable or relevant results.  Specifically:

- Mr. Weir's models do not distinguish between a premium attributable to an interpretation of the claim as misleading and a literally truthful interpretation that the ingredients in the Products that provide protection from the sun are naturally sourced. Ugone Reply Decl. ¶¶ 32(d), 41(a).
- Mr. Weir failed to identify all product attributes he would need to include in both of his models. Weir Tr. 117, 143-144. *See, Snapple,* 2010 WL 3119452, at *7. Further, he acknowledged that omission of an important variable "may" yield unreliable results. Weir Tr. 161, 82; Ugone Reply Decl. ¶¶ 27(b), 28, 41(c). As to the variables listed for his conjoint analysis, he "[doesn't] know that [he] would even include all of those." Weir Tr. 159-160.

8

NEUTROGENA'S SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:   EDCV 13-01316 SVW (OPx)
KL3 2970919.2

- Mr. Weir failed to identify the "independent market research" he claims exists (Weir Decl. ¶ 21), "much less demonstrate that such reports are relevant [or] reliable." *See, Snapple,* 2010 WL 3119452, at *8.
- Mr. Weir acknowledged that he would need to identify "other products of some kind" but such products "are not specifically identified." Weir Tr. 72-73, 104. Ugone Reply Decl. ¶¶ 27(b)(3), 28(b), 32(a). *See, Snapple,* 2010 WL 3119452, at *8.
- Mr. Weir failed to demonstrate the availability of data on competitor product attributes historically over the class period (Weir Tr. 117) and admits that such information "may not be something [he] could determine from market data." Weir Tr. 80. Mr. Weir merely speculated that some historical attribute information may be available, but acknowledged that he has not analyzed the sunscreen market. Weir Tr. 117-118. Ugone Reply Decl. ¶ 27(a), 32(b).
- Mr. Weir fails to acknowledge the fact that he will be unable to determine the value solely attributed to the Challenged Claims if he was forced to omit a variable correlated to those claims in his regression. Ugone Reply Decl. ¶ 32(c).
- Mr. Weir presented "[o]ne potential" general regression equation but he has not made a multitude of decisions necessary for his equation to actually determine a price premium for the Challenged Claims (if one exists). Weir Decl. ¶ 14; Ugone Reply Decl. ¶ 27(c). Nor has he done any work to confirm that any specific algorithm will be workable in this case. *See, e.g., id*; Weir Tr. 57, 58, 82, 101.
- Mr. Weir failed to describe how he would convert consumer preferences to a price premium observed in the marketplace for his conjoint study (Ugone Reply Decl. ¶¶ 35-40), and failed to address how his analysis would overcome numerous other common flaws in both methods. *Id.* ¶¶ 32(e), 41(b),(d),(e).[8]

---

[8] In addition, although Plaintiffs allege that Neutrogena was "unjustly enriched at the expense of Plaintiffs" and class members (FAC ¶ 49), Mr. Weir admitted that at least

In short, Mr. Weir's methods do not pass muster under *Comcast* because they are "merely speculative" and will, for all we know, yield "arbitrary measurements." 133 S. Ct. at 1433.[9] To paraphrase *Snapple*, "[w]hile plaintiffs assert that [Mr. Weir] has proposed a suitable methodology, in reality, [Mr. Weir] has done nothing more than identify two possible approaches and assert that they will work in this case. Plaintiffs essentially ask that [Mr. Weir] be taken at his word. As [Mr. Weir] himself concedes, however, because he has not performed any empirical analysis or identified any relevant data, he does not yet know whether his methodology will, in fact, be workable in this case." *Snapple*, 2010 WL 3779452, at *9. The entirety of Plaintiffs' supposed "evidence" boils down to Mr. Weir's "mere promises" that his methods will yield a classwide premium, which is insufficient to establish compliance with Rule 23. *Gartin*, 245 F.R.D at 435.

### (3) Mr. Weir's Methodologies Require Myriad Individualized Inquiries and Present Intractable Management Problems

Mr. Weir's methodologies purport to calculate "aggregate damages" for the class and any "subclass." Weir Tr. 41-42. But Mr. Weir does not quarrel with the data that Dr. Ugone obtained, which ███████████████████

---

some of the alleged premium is attributable to the price charged by retailers, and may not be included by Neutrogena in its wholesale price and that "there would have to be additional steps if you were trying to determine just what Neutrogena obtained". Weir Tr. 125-26.

[9] Plaintiffs' reliance on *Leyva v. Medline Indust. Inc.*, 716 F.3d 510 (9th Cir. 2013) and *Lindell v. Synthes USA*, 2014 WL 841738 (E.D. Cal. Mar. 4, 2014), both wage and hour cases, is misplaced. *See*, Def. Br. 11 n.8. As the court stated in *Leyva*, in those kinds of cases, determination of individual damages was a "purely mechanical process" and could be calculated based on each employee's lost wages as reflected in the defendant's records. 716 F.3d at 514. Here, [a] finding of liability by itself . . . does not give rise to a mechanical method of awarding classwide relief." *Guido*, 2013 WL 3353857, at *16 n.5. *McCrary v. Elations Co.*, 2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) does not discuss *Comcast*, and moreover is distinguishable because it involved an efficacy claim; "Defendant cannot reasonably argue that a putative class member would purchase a product that does not work." *Id.* at *44.

---

10

NEUTROGENA'S SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.: EDCV 13-01316 SVW (OPx)
KL3 2970919.2

███████████████████████████████████████████████████████ Instead, Mr. Weir acknowledges that "every individual class member is going to have a different level of damage", and that he would have to calculate different price premiums and create multiple subclasses for each Product, across different geographies, time periods, and retail channels.[10] Weir Tr. 49, 26-29. Indeed Mr. Weir explained that "[t]here may be other[]" factors leading to different price premiums and necessitating additional subclasses, but "because I haven't done the analysis, I just don't know." *Id.* 51-52, 26-30, 42. Moreover, Mr. Weir explained that each putative class member could belong to any number of the undefined subclasses. *Id.* 47-49. Thus the evaluation and the allocation of damages to any individual class member is dependent on individual inquiries that destroy predominance. *Id.* 39-40; Ugone Reply Decl. ¶19-24. *See, Red v. Kraft Foods, Inc.*, 2012 WL 8019257, at *11 (C.D. Cal. Apr. 12, 2012) ("[M]emory issues as to what products were purchased where and in what quantities, as well as price differences at the vast array of retail establishments that sell the Products" result in "individualized . . . damages calculations" that "predominate" over common questions).

"Even if the individualized damages would not defeat the predominance requirement, at the very least, they should be considered on the issue of superiority—more specifically, manageability." *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1023 (N.D. Cal. 2010). "Courts are reluctant to permit actions to proceed when there

---

[10] Mr. Weir acknowledged that distribution of damages on an average basis would overcompensate some class members and undercompensate others. Weir Tr. 45. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 774 (7th Cir. 2013) (awarding class members damages on basis of averages is improper); *Snapple*, 2010 WL 3119452, at *9 (crediting expert testimony that "aggregate data, such as average retail prices, could not be relied upon to determine class-wide injury accurately because average prices are not the actual prices paid by consumers and mask significant price variations in retail prices charged by retailers").

---

11
NEUTROGENA'S SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No.:  EDCV 13-01316 SVW (OPx)
KL3 2970919.2

1 are formidable difficulties of distributing any ultimate recovery to the class members, because such actions are not likely to benefit anyone but the lawyers who bring them." *Minkler v. Kramer Labs., Inc.*, 2013 WL 3185552, at *7 (C.D. Cal. Mar. 1, 2013) (citations and alterations omitted). Here, the permutations involving "thousands" of class members (Pl. Br. 17) and numerous, undefined subclasses are nearly endless. Particularly when layered on top of the "case management subclasses" Plaintiffs propose to deal with variations in state law and differences in the labeling of the Products (Pl. Reply Br. 12 & 2 n.4), it is clear that Plaintiffs have failed to demonstrate how they can suitably and realistically try their claims. *See, Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (district court abused discretion certifying class because plaintiffs did not show how class trial could be conducted).[11]

### III. CONCLUSION

Neutrogena respectfully requests that Plaintiffs' motion be denied in its entirety.

DATED: May 1, 2014                     Respectfully submitted,

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: _Harold P. Weinberger /EP_
Harold P. Weinberger (*admitted pro hac vice*)
Eileen M. Patt (*admitted pro hac vice*)
1177 Avenue of the Americas
New York, New York  10036
(212) 715-9100
hweinberger@kramerlevin.com
epatt@kramerlevin.com

---

[11] Plaintiffs assert that "even if the Court were to conclude that damages cannot be calculated on a class-wide basis, the Class would still be entitled to injunctive relief." Pl. Reply Br. 8 n.17. Plaintiffs cite no authority for the proposition that a mere prayer for injunctive relief relieves a plaintiff from compliance with Rule 23(b)(3). Plaintiffs did not move to certify an injunctive class under Rule 23(b)(2), and cannot do so in a footnote in a reply brief.